# STATE ex rel. GEORGE T. SIMPSON v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY. [1]

July 5, 1912.

Nos. 17,495—(14).

**Transportation of militia — act valid.**

In an action to compel the defendant, a railway company, to carry a member of the state National Guard traveling in the discharge of his military duties under orders, at the rate and under the terms specified in chapter 493, Laws 1909, the defendant having waived the defense that the rate therein provided is inadequate compensation for the transportation required, it is *held* that it does not appear that the act contravenes either the Federal or the state Constitution, in that it takes defendant's property without compensation, or without due process of law, or deprives it of the equal protection of the laws.

**Same — discrimination in rate.**

An act establishing a lower rate than the maximum passenger rate for the carriage of members of the state's military force upon railway lines within the state, when such members are required to so travel under orders in discharge of their military duties, is not an unlawful discrimination of which defendant may complain; the defense having been waived that such rate is not compensatory.

**Same — interference with business.**

The importance of maintaining, instructing, and disciplining a state militia, and providing adequate and efficient means for transporting the members thereof over the railways of the state, is such that the legislature may properly place them in a class when traveling under orders in discharge of their duties, and regulate the railway companies as to the mode of furnishing transportation; and hence the act in question is not an unlawful interference with defendant's management of its own business.

Upon the relation of George T. Simpson, Attorney General, the district court for Ramsey County issued its writ of mandamus di-

[1] Reported in 137 N. W. 2.

[Note] Power to require carriers to give reduced rates to certain classes of persons, see notes in 11 L.R.A.(N.S.) 973 and 33 L.R.A.(N.S.) 956.

recting defendant to furnish transportation to the adjutant general, or show cause why it should not be furnished. The matter was heard by Kelly, J., who directed the writ be made peremptory. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*F. W. Root,* for appellant.

*Lyndon A. Smith,* Attorney General, *Clifford L. Hilton,* Assistant Attorney General, for the State.

HOLT, J.

Chapter 493 [p. 616] of the General Laws of 1909 [1] reads as follows:

"An act fixing the charges to be paid to the railroads for transporting the Minnesota National Guard or the Minnesota Naval Militia or Reserve and their baggage, the terms of transporting the same and prescribing a penalty for the violation of said act.

"Be it enacted by the legislature of the state of Minnesota:

"**Rate of One Cent.—** Section 1. That whenever it shall be necessary for any or all of the officers or men of the Minnesota National Guard or the Minnesota Naval Militia or Reserve to travel upon any railroad in the state under orders from competent authority to perform military duty, such railroads shall furnish transportation at the rate of one cent per mile for the whole distance to be traveled upon such railroad or railroads within the limits of this state, for each officer or enlisted man so carried including the usual amount of baggage; and all station or ticket agents or conductors shall sell first class tickets or furnish first class passage at the rate named, upon being notified that such officer or officers or enlisted men are traveling upon military duty. Such notification must be issued by the adjutant general, and may be by telegraph or by filing a copy of the order issued by the adjutant general for such transportation with the station or ticket agent or conductor. This rate shall apply to officers or men traveling under orders, either single or in companies, so that whenever one or more members of the guard shall present an order for transportation issued by the adjutant general, it shall be honored by

[1] [R. L. Supp. 1909, §§ 2007-32, 2007-33.]

the ticket agent or by the conductor and received in lieu of fare, and when presented by the railroad companies to the adjutant general, shall be audited to be paid at once at the fixed rate."

Section 2 prescribes the penalty for violation of section 1.

On July 28, 1909, Brigadier General Fred B. Wood, Adjutant General of the state of Minnesota, and a member of the National Guard, acting under orders from the commander in chief thereof, was required, in the discharge of his military duties, to travel from St. Paul to Lake City, in this state. The defendant, a railway company, operating a line of railway between the two places mentioned, on which are run several passenger trains daily, was duly notified by the presentation to its ticket agent of the written order which, under the provisions of section 1 of the above act, entitled said Wood to passage on defendant's train to Lake City, but the defendant refused to furnish him transportation. It is admitted that the defendant will, in the future, refuse to comply with the law in question. The state, on the relation of the attorney general, obtained a writ of mandamus from the district court, directing the appellant railway company to furnish the transportation or show cause why it should not be done. On trial had the court ordered a peremptory writ to issue, and from the judgment entered thereon the railway company appeals.

The assignment of errors raises three main objections to the judgment. First, the act contravenes the Federal and state Constitutions alike; second, it is illegal discrimination; third, the act seeks to deprive the railway company of the right to require cash payment to be made in advance, and invades the right of the company to manage its own affairs.

It is claimed that section 1 of article 14 of the amendments to the Federal Constitution is violated by the act, because the railway company is denied equal protection of the laws, and its property rights are invaded without compensation, and that it contravenes sections 2, 7, and 13 of article 1 of the state Constitution on the same grounds. The argument proceeds on the theory that the two-cent passenger law (chapter 97, p. 109, Laws 1907)[1] establishes a reasonable compensation or rate for carrying passengers on railways; hence it follows that one-half of that rate must be less than a fair compensation for the

---

[1] [R. L. Supp. 1909, §§ 2007-1, 2007-2.]

service.  It is also said the stringent anti-pass law (chapter 449, p. 685, Laws 1907)[1] prohibits the granting by any railroad of special privileges.  On the last proposition nothing more need be said than this:  If there be conflict between two acts of the legislature relating to the same subject-matter, the latest act prevails, provided it is otherwise valid legislation.  The railway company in its answer, in addition to demanding protection under the constitutional and statutory provisions referred to, alleged as follows:

"Seventh.  It avers that the rate prescribed in and by the said act is wholly inadequate to compensate this defendant for the cost of conducting its business of transporting passengers between points within the state of Minnesota, and is wholly inadequate to compensate this defendant for the cost of transporting the persons enumerated in said act.

"Eighth.  It avers that the provisions of said act, requiring this defendant to furnish transportation at one cent per mile, are invalid and unconstitutional, and would, if enforced, amount to confiscation of the property of the defendant, and would deprive it of its property without due process of law, in violation of the provisions of said section 1 article 14 of the amendments to the Constitution of the United States, and in violation of the provisions of said section 7 of article 1 of the Constitution of the state of Minnesota."

At the trial no evidence was taken to sustain these allegations of the answer, and the attorney for appellant, at the opening of the trial, stated:  "The defendant at this time waives any defense or contention made under paragraphs seventh and eighth of its answer."  Under this state of the record there can be but one conclusion:  That it does not appear that, by compelling the appellant to carry the National Guard of the state at the rate of one cent per mile, it is deprived of its property or any of its rights or privileges without just compensation or without due process of law.

It must be conceded that authority rests in the state to compel the common carriers within its territory to render reasonable service as such carriers, and to regulate such service as to mode and compensa-

[1] [R. L. Supp. 1909, §§ 2010–2 to 2010–4.]

tion, provided the regulation is not so onerous that the carrier, as a result thereof, is deprived of its property without compensation or without due process of law. The equal protection of the law in the constitutional guaranty does not mean that a common carrier shall be allowed to derive as great a profit in the conduct of its business as others are permitted to make, or that it shall be as free from regulation as obtains in some other lines of business, or even to the extent that may be allowed in some other lines of common carriage. It may, however, be conceded that the equal protection of the laws prohibits the legislature from singling out certain railway companies to transport troops at reduced rates, or from directing them to be carried over different railways at unequal rates.

We cannot conceive of any violation of any provision in either Federal or state Constitution where the state requires a railway company to carry its military force for a fair and reasonable compensation. The mere fact that a maximum passenger rate has been fixed at two cents per mile does not prove that a lower rate is not compensatory or reasonable under certain conditions. On the contrary, we think it should be assumed, till the contrary appears, that the rate of one cent per mile established by the act is valid, and to be valid implies that the compensation is a just and fair equivalent for the service required. But the express waiver of inadequate compensation as a defense takes out of the case the contention that the law deprives the railway company of its property without due compensation, or without due process of law, and that defendant, for that reason, is not given equal protection under the laws.

The contention that the law is discriminatory presents a more doubtful question. It is singular that a state apparently keenly sensible of the necessity and justice of compelling all railway companies to treat all persons alike, as evidenced by the anti-pass act, should, for itself, exact more favorable terms than the general public enjoys from these companies. For the transportation it requires the great state of Minnesota is undoubtedly able to pay the same rate that it permits the carrier to charge its citizens or the traveling public. But, while the example of civic righteousness set by the state may be bad, the law may nevertheless be valid. The discrimination is not against

the railway company, because under the facts in this case it receives all it may legally demand. It is not discrimination in favor of one class against another, for the state pays the transportation when the National Guard or any of its members travels under orders. At other times the railway company must require the same rate of the members belonging to the state military force as is demanded of the public generally. If this be discrimination at all, it is against the traveling public generally, and in favor of the state.

In Willcox v. Consolidated Gas Co. 212 U. S. 19, 29 Sup. Ct. 192, 53 L. ed. 382, 15 An. Cas. 1034, where a legislative act was attacked as discriminatory, the syllabus, in part is: "Provision in a gas rate act establishing one rate for the municipality and another for individual consumers is not an unreasonable classification, and does not render the act unconstitutional under the equal protection clause of the fourteenth amendment. Where none of the different classes of consumers complain of different rates, the corporation cannot complain of such differences, provided the total receipts are sufficient to yield an adequate return." In the opinion on this subject the court says [p. 54]: "Lastly, it is objected that there is an illegal discrimination as between the city and the consumers individually. We see no discrimination which is illegal, or for which good reasons could not be given. But neither the city nor the consumers are finding any fault with it, and the only interest of the complainant in the question is to find out whether, by the reduced price to the city, the complainant is upon the whole unable to realize a return sufficient to comply with what it has the right to demand. * * * We cannot see from the whole evidence that the price fixed for gas supplied to the city by the wholesale, so to speak, would so reduce the profits from the total of the gas supplied as to thereby render such total profits insufficient as a return upon the property used by the complainant. So long as the total is enough to furnish such return, it is not important that with relation to some customers the price is not enough. Minneapolis v. Minnesota, 186 U. S. 257 [22 Sup. Ct. 900, 46 L. ed. 1151]; Atlantic Coast Line v. North Carolina Commission, 206 U. S. 1 [27 Sup. Ct. 585, 51 L. ed. 933, 11 An. Cas. 398]."

If it is not unlawful discrimination to require a lower rate of a

118 M.—25.

public service corporation when the service is rendered for a city than when the same service is rendered for any inhabitant of such city, it would seem to follow that a state may, if its conscience permits, establish a lower rate for itself than the maximum rate it permits the common carriers to charge the public generally. But if there be some good reason for placing the state troops in a class by themselves when traveling under orders, such classification for the purpose of fixing a lower rate of transportation is not unlawful. A classification of commodities so as to permit different rates is undoubtedly permissible, and such classification extended to persons is also valid when on a reasonable basis. Laws 1907, p. 109, c. 97, now invoked by appellant as a righteous enactment for the law of this case, classifies travelers, making the maximum rate for persons twelve years or over two cents per mile, and for those under that age one cent per mile. A somewhat similar basis for classification or discrimination was upheld in Commonwealth v. Interstate, 187 Mass. 436, 73 N. E. 530, 11 L.R.A.(N.S.) 973, 2 An. Cas. 419, and upon appeal of the case to the Supreme Court of United States in 207 U. S. 79, 28 Sup. Ct. 26, 52 L. ed. 111, 12 An. Cas. 555, wherein a statute provided that school children during certain hours should be carried at reduced rates. The reasoning of Justice Holmes, that to promote the education of its citizens the police power of the state may justify the right to even lay the burden or tax on a common carrier to transport children to school at a lower rate than otherwise required, would support the contention of the state here that the classification is not capricious or arbitrary.

For the necessity of maintaining an efficient and well-disciplined military force for the state as well as for the nation is recognized in Constitutions and statutes. To supplement our small standing army it has been considered expedient to organize and make effective for time of need state militia. The men constituting this force must be assembled for instruction, discipline, and at times for action. The very existence of the state or nation may depend on the efficiency of its military force. Under this view of the importance of the National Guard of this state for the protection of the state and nation, the necessity for its transportation over the railways in this state in order

to meet for that training and discipline which alone makes a military force efficient is apparent. So that troops or soldiers traveling under orders may be considered in a class by themselves. It may be suggested, not, however, as a pursuasive reason, that experience has shown that troops are more often needed to protect the property of railway companies than that of other persons against mobs and unlawful uprisings. The fact, also, that transportation of military bodies involves, as a rule, a considerable number of men at a time, may afford some reason for a classification. While sanctioning neither the wisdom nor abstract justice of placing the state troops in a separate class as to rate of transportation on the railways in this state, we are of the opinion that, on the conceded facts and the law, the classification made in the act under consideration is not unlawful discrimination.

The appellant relies with great confidence on In re Gardner, 84 Kan. 264, 113 Pac. 1054, 33 L.R.A.(N.S.) 956, holding unconstitutional a statute of like import with our own providing for a one-cent rate for carrying the National Guard when traveling under orders, and also the one of Lake Shore & M. S. Ry. Co. v. Smith, 173 U. S. 684, 19 Sup. Ct. 565, 43 L. ed. 858, upon the decision of which the Supreme Court of Kansas bases its opinion. The question determined in the last-named case was the power of the legislature, after having established a maximum passenger rate on railways, to also enact that when a person desired to buy a thousand-mile ticket he could do so at a less rate, such ticket to be valid for two years after its purchase, and might be also used by the purchaser's wife or children. The act had been held valid by the Supreme Court of Michigan (114 Mich. 460, 72 N. W. 328), but the Supreme Court of the United States held it unconstitutional, three justices dissenting. The reasons for the decision may properly be urged in support of appellant's contention here, and would be of cogent force, were it not for these considerations: The legislature in the Smith case gave a reduction to all who were willing to pay for a thousand-mile ticket. This created an uncertainty in the earnings of the railways, so that the maximum rate established might be too low, and hence confiscatory of the carrier's property. It discriminated in favor of the one who could

afford to invest in mileage books and against the one of small amount of ready cash.    It was not establishing a rate.

But in the case at bar we may take knowledge of the fact that the military force of the state is limited, and the reduction in the earnings of the railways by being compelled to transport this force at the rate provided must be considered so small as not to be appreciable; and as to the chief contention of illegal discrimination, the Supreme Court, in Willcox v. Consolidated Gas Co. 212 U. S. 19, 29 Sup. Ct. 192, 53 L. ed. 382, 15 An. Cas. 1034, supra, held, although in the brief of counsel cited to the Smith case, supra, (the opinion in both cases being by Justice Peckham) that a discrimination in favor of a municipality is not illegal; and, further, the act here in question established a rate for the state troops which is conceded to be not unreasonable.    With all due respect to the opinion of the Supreme Court of Kansas in Re Gardner, supra, we are inclined to believe that the basis for classifying the state militia was not there given the consideration it merits.    The principle announced in Willcox v. Consolidated Gas Co. supra, that discrimination in favor of a state is not illegal, was overlooked, and the utterances in the Smith case applied to facts not similar in important particulars.    We hold, therefore, that the rate established to be paid by the state to a railway company for transporting its troops is not an illegal discrimination.

In view of the stipulation that the state had at all times ample funds to pay for the transportation required, and that the claim, therefore, would have been promptly paid on presentation, we think there is not much merit to appellant's third contention that the law is an unwarranted interference with the company's management of its own business.    We cannot take the suggestion seriously that by forged orders the company may be defrauded, and by means of such may also against its will become an offender against the rigorous anti-pass law. No scheme devised for the protection of legitimate business is so perfect that some evil-minded person may not be able to circumvent it.

It must be remembered that a military force is subject to emergency calls demanding quick transportation.    These may be so urgent that

if the ordinary course in buying tickets singly and conforming to the usual routine, which undoubtedly the railway company may prescribe for the traveling public, should be observed by the soldiers, the delay thus occasioned might result in disastrous loss of life or property. Section 4 of article 5 of the state Constitution states: "He [the Governor] shall be commander-in-chief of the military and naval forces, and may call out such forces to execute the laws, to suppress insurrection, and to repel invasion." And in article 12 the duty is laid on the legislature to pass such laws for the organization, discipline, and service of the militia of the state as may be deemed necessary. We doubt not that the legislature has the power to prescribe reasonable railway regulations to promote the efficiency of a body of men so important in the service of the state, by facilitating their assembling for instruction and discipline, and by providing for speedy transportation when a crisis calls for their prompt action.

It is said that when a telegram, which is mere copy of something, is to serve as authority for a ticket agent, how easy this lends itself to imposition or fraud. But it may be suggested that a ticket agent has generally a telegraph at his disposal to verify the order. However, we see nothing in the provisions of this act which might unduly interfere with the railway companies' management of their own business. The transportation of the state troops is, or may become, so vital to the welfare of the state and its inhabitants, including the railway companies, that a regulation in regard thereto which does not appear to be unreasonable should be sustained. We are of opinion that the objections urged on that score to the present act will vanish when put to the test, and that the anticipated imposition by evil-minded persons upon appellant under the guise of this law is not likely to occur.

The judgment is affirmed.