STATE OF NEBRASKA V. BURLINGTON & MISSOURI RIVER RAILROAD COMPANY.

FILED NOVEMBER 21, 1901.   No. 11,219.

1. **Enactment of Laws:** CONSTITUTIONAL PROVISION MANDATORY. The provisions of section 11, article 3, of the constitution, relative to the mode of enacting laws, are mandatory.

2. **Title Part of Act:** SUBJECT OF LEGISLATION: EXPRESSED IN TITLE. The title to a legislative act is a part thereof, and must clearly express the subject of legislation.

3. **Enrolled Bill:** PRIMA FACIE EVIDENCE. An enrolled bill in the office of the secretary of state is only *prima facie* evidence of its passage.

4. **Legislative Journals:** CONTRADICTION: CONTROLLING EVIDENCE. Where the legislative journals unequivocally contradict the evidence furnished by the enrolled bill, the former will control. *Webster v. City of Hastings*, 59 Nebr., 563.

5. ——: INVALID ACT. A statute is invalid which the legislative journals show was never passed in the mode prescribed by the constitution.

6. **Reading of Statute Before Each House.** A statute is invalid which is not read in each house of the legislature on three different days.

7. **Invalid Statute.** Chapter 60, Session Laws, 1887, is void, as the act as enrolled was not passed by the legislature in the mode prescribed by section 11, article 3, of the constitution.

ORIGINAL action in the supreme court to recover penalties under section 9, article 8, chapter 72, of the Compiled Statutes, in the sum of $25,000. Submitted on demurrer to petition. *Dismissed.*

*Constantine J. Smyth, Attorney General,* for the state.

*Green, Breckenridge & Kinsler, J. W. Deweese* and *Frank E. Bishop, contra. Charles F. Manderson,* of counsel.

*Woolworth & McHugh, amici curiæ.*

NORVAL, C. J.

On July 13, 1897, one T. H. Tibbles filed a complaint with the state board of transportation charging that the Burlington & Missouri River Railroad Company in Nebraska was exacting and receiving unjust and unreasonable rates on the shipments of live stock. A hearing was had before said board of the matter alleged in said complaint, which resulted in an order being entered on November 26, 1897, that the defendant, on or before December 5, 1897, restore the car load rates in force prior to August 10, 1897. Subsequently the board extended the time for taking effect of said order until December 16, 1897. The state claims that the defendant has violated said order of the state board of transportation, and this action was commenced in this court to recover the sum of $25,000 as penalties for such alleged violation, for which provision is made in section 9, article 8, chapter 72, Compiled Statutes. A demurrer to the petition has been interposed, upon which the cause has been submitted for our consideration.

The legislature in 1885 passed an act entitled "An act to provide a board of railroad commissioners, to define their duties and to provide for their salaries." Session Laws, 1885, ch. 65, Compiled Statutes, 1885, ch. 72, art. 8. By this act the attorney general, secretary of state and auditor of public accounts were constituted the board of railroad commissioners. Chapter 60 Session Laws, 1887, is entitled "An act to regulate railroads, prevent unjust discrimination, provide for a board of transportation, and define its duties, and repeal articles 5 and 8 of chapter

72, entitled 'Railroads' of the Revised Statutes and all acts and parts of acts in conflict herewith." Compiled Statutes, 1887, ch. 72, art. 8. Said chapter 60 provided for a state board of transportation composed of the state officers already mentioned, together with the state treasurer, and clothed it with power to determine and establish reasonable rates of transportation for common carriers of freight. One of the questions raised by the demurrer is whether the state board of transportation has a legal existence. In other words, was chapter 60, Session Laws, 1887, passed by the legislature in the manner prescribed by the constitution? If the act was unconstitutional, then the order of the board of transportation of November 26, 1897, was invalid, and no penalties were incurred by the defendant by reason of any violation thereof. Section 11, article 3, of the constitution provides: "Every bill and concurrent resolution shall be read at large on three different days in each house, and the bill and all amendments thereto shall be printed before the vote is taken upon its final passage. No bill shall contain more than one subject, and the same shall be clearly expressed in its title." This section has been frequently before this court for consideration, and its provisions have been repeatedly held to be mandatory, and that any legislation in disregard thereof is unconstitutional and void. The title to a legislative bill must clearly express the subject of legislation. It will be observed that the title to chapter 60, Session Laws 1887, as disclosed by the enrolled bill in the office of the secretary of state, among other things mentions the repeal of "articles 5 and 8 of chapter 72, entitled 'Railroads,' of the Revised Statutes." The Revised Statutes of Nebraska contains no chapter numbered 72, nor yet one entitled "Railroads," and chapter 72, General Statutes of 1873, relates to the "seat of government," and is not subdivided into articles. It is chapter 72, Compiled Statutes, 1885, which bears the title of "Railroads," and contains articles 1 to 9, inclusive. If it were articles 5 and 8 of this chap-

ter that was intended to be repealed by chapter 60, Session Laws, 1887, this portion of the subject of legislation was not with clearness and certainty expressed in the title of the bill as enrolled.

But said chapter 60 is invalid for reasons more substantial. It is conceded that no bill bearing the title to the enrolled act known as chapter 60, Session Laws, 1887, was ever introduced in either house of the legislature, but the contention of the state is that the act in question originated in the senate and was known as Senate File 41. The title by which it was introduced was "A bill for an act to repeal article 8, of chapter 72, entitled 'Railroads,' of the second edition of the Compiled Statutes of the State of Nebraska." The purpose of that bill was solely the repeal of the law creating the board of railroad commissioners, passed in 1885, and such object was with sufficient clearness expressed in the title of the act, but it contained no provision for the creation of a state board of transportation. But it is argued by the attorney general that said Senate File No. 41 was amended in the senate and duly passed by both houses of the legislature of 1887. It appears that Senate File No. 41, after having been read in the senate on two different days, was referred to, and reported back by the appropriate committee under the title by which it was introduced. Thereafter all after the enacting clause was stricken from the bill, and what now constitutes the act creating the board of transportation was substituted, but the title remained unchanged, and in this condition the act was read the third time, placed upon its passage and received the required number of affirmative votes to carry the same. The journal of the senate, after stating these facts, recites: "A constitutional majority having voted in the affirmative, the bill was passed and the title agreed to as amended." The journal of the senate does not disclose that the original title under which the act was introduced was ever amended in that body, unless such fact is revealed by the quotation just made. The journal of the

house discloses that it was reported to the lower house by the secretary of the senate that that body had passed "Senate File No. 41, a bill for an act to repeal article 8 of chapter 72, entitled 'Railroads,' of the second edition of the Compiled Statutes of the state of Nebraska." The journal of the house shows that the bill was read the first and second times in that body under the title now appearing on the enrolled bill. Under the same title the bill was referred to and reported back by the railroad committee with a majority and minority report. Subsequently the journal of the house states that "Senate File No. 41, a bill for an act to repeal article 8 of chapter 72, entitled 'Railroads,' of the second edition of the Compiled Statutes of the state of Nebraska, was read the third time and put upon its passage," and a constitutional majority, upon the call of the yeas and nays, having voted in favor of the bill, it was "passed and the title was agreed to." Thereafter the clerk of the house notified the senate that the house had passed "Senate File No. 41, a bill for an act to repeal article 8, of chapter 72, entitled 'Railroads,' of the second edition of the Compiled Statutes of the state of Nebraska." Subsequently the committee on engrossed and enrolled bills reported to the senate that it had carefully examined and compared "Senate File No. 41, an act to regulate railroads, prevent unjust discrimination, provide for a board of transportation and define its duties, and repeal articles 5 and 8, of chapter 72, entitled 'Railroads,' of the Revised Statutes, and all acts and parts of acts in conflict herewith,   *   *   *   and find the same correctly enrolled." On the same day the senate journal states that "The president *pro tem.* signed Senate File No. 41, a bill for an act to repeal article 8, of chapter 72, entitled 'Railroads,' of the second edition of the Compiled Statutes of the state of Nebraska." The house journal likewise recites that the speaker signed Senate File No. 41 under the title last aforesaid. Subsequently the committee on engrossed and enrolled bills of the senate and house reported to their respective bodies that they had

presented to the governor for his approval and signature Senate File No. 41 under the title now appearing upon the enrolled bill, and the governor, through his private secretary, reported to the senate that he had signed the bill under the same title.

It will be observed that Senate File No. 41, when introduced and at various days of its pendency before the legislature, contained one title and at other periods of legislation and when presented to and signed by the governor possessed another or entirely different title. It is, however, argued by the attorney general that the title under which Senate File No. 41 was introduced was changed in the senate before its passage by that body as disclosed by the recital in the manuscript copy of the senate journal with reference to that bill that "a constitutional majority having voted in the affirmative, the bill was passed and the title agreed to as amended." What amendment to the title of the bill, if any, was made in the senate the journal of that body does not inform us; and the silence of the journal on that subject it is contended is no proof that the original title which Senate File No. 41 bore was not amended to conform to the title which the enrolled bill now bears and *State v. Frank*, 60 Nebr., 327, is cited in support of the proposition. Whether or no this argument is well founded it is unimportant that we now pause to consider, since the history of the progress of the bill through the two houses of the legislature establishes beyond controversy that the bill as enrolled was not read at large on three separate days in each house, or that the constitutional majority of the senate and house voted in favor of its passage, as required by the constitution to become a law. It is true the enrolled bill is *prima facie* evidence of its passage, but it is not conclusive evidence upon the subject. In *Webster v. City of Hastings*, 59 Nebr., 563, Mr. Justice SULLIVAN observed: "The rule established by our former decisions is that the due authentication and enrollment of a statute affords only *prima facie* evidence of its passage; and that the leg-

islative journals may be examined for the purpose of ascertaining whether the measure was enacted in the mode described by the constitution. If the entries found in the journals expressly and unequivocally contradict the evidence furnished by the enrolled bill, the former will prevail. The journals, being the records of legislative proceedings kept in obedience to the command of the constitution, are considered the best evidence of what affirmatively appears in them regarding the enactment of laws." That this doctrine is sound there is no room for doubt, especially in the light of section 418 of the Code of Civil Procedure, which declares that "The proceedings of the legislature of this state, or any state of the union, of the United States, or of any foreign government are proved by the journals of those bodies respectively, or of either branch thereof," etc. The journals of the house and senate therefore furnish the best evidence of the history of the passage of a bill or of the proceedings of the legislature relative thereto. The legislative journals not only fail to disclose that chapter 60, Session Laws, 1887, passed both houses of the legislature with the title which the enrolled bill bears, but those journals affirmatively show that Senate File No. 41, chapter 60, Session Laws, 1887, passed both houses of the legislature with the title which the bill had when introduced in the senate. Manifestly it was not passed nor adopted by the legislature under, or with, any other title. Senate File No. 41 was read in the house twice under the title disclosed by the enrolled bill, then read the third time, placed upon its passage and adopted under the title which the bill bore when introduced in the senate. How this happened we are not advised. But it is certain that the enrolled bill with the title it now contains was not read in the house on three different days; hence it could not become a valid law. / The title of an act is an essential part of it. This must be true, since the constitution not only requires that a bill shall have a title, but that the same shall clearly express the subject of legislation. No law passed with-

out a title is valid. Constitution, sec. 11, art. 3; *Weis v. Ashley*, 59 Nebr., 494; *Webster v. City of Hastings*, 59 Nebr., 563. It follows that a majority of the members of each house of the legislature must vote in favor of the passage of a bill and of every part thereof in order to make it a valid enactment, and a majority of the members of the legislature never having voted for the adoption of the title which the enrolled Senate File No. 41 bears, the mandatory provisions of the constitution have been disregarded in its passage, and the enactment is invalid. We do not say that it is essential that the legislative journals should give the title of a proposed act; but when they attempt to do so, they furnish the best evidence of the title which the bill had at that time. We regret that there is no escaping the conclusion that Senate File No. 41 is unconstitutional and void. It was not our intention to have passed upon the question at this time, and we should not have done so had not counsel for the state pressed us for a decision thereon, since the case could have been more readily decided on another point urged by the defendant.

For the reasons stated the demurrer to the petition is sustained, and the action

DISMISSED.

HOLCOMB, J., concurring.

Although not entirely agreeing with the course of reasoning pursued by the chief justice in the foregoing opinion, I concur in all the propositions stated in the syllabus, and regard as irresistible the conclusion that the act under consideration failed to pass both branches of the legislature in compliance with the commands of the constitution.