RIVETT LUMBER & COAL COMPANY ET AL., APPELLEES, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, APPELLANT.

FILED MAY 4, 1918. No. 20081.

1. **Carriers: DISCRIMINATION: REMEDIES.** Where there is attempted discrimination between persons and associations by a common car-

Rivett Lumber & Coal Co. v. Chicago & N. W. R. Co.

rier, and a person or association is not allowed "reasonable and equal terms, service, facilities and accommodations," section 5978, Rev. St. 1913, affords proper and prompt redress by the courts. But when the question is whether a community or locality is properly served by a railroad company, not only is the question of rates involved, but other questions and conditions as well are to be considered that are peculiarly within the province of the state railway commission.

2. ———: STATE RAILWAY COMMISSION: JURISDICTION. In the latter case, the state railway commission has jurisdiction, and not the courts.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed, and dismissed.*

*A. A. McLaughlin, Wymer Dressler* and *Lyle Hubbard,* for appellant.

*William Baird & Sons, contra.*

DEAN, J.

The Rivett Lumber & Coal Company and George Stoltenberg, plaintiffs and appellees, began this action under section 5978, Rev. St. 1913, against the Chicago & Northwestern Railway Company, defendant and appellant, in the district court for Douglas county, to compel defendant to construct a branch side-track with necessary switch connections adjacent to and opposite certain vacant properties owned by plaintiffs under contracts of purchase, upon which they proposed to establish certain industries at West Benson, located about a mile distant from Benson, in Douglas county. Plaintiffs obtained judgment, and defendant appealed.

Defendant contends that the court is without jurisdiction to compel compliance with plaintiffs' demands, and that the question is one for inquiry and control by the state railway commission. The argument is based mainly on the proposition that a compliance with the order of the trial court in the premises would be equivalent to the establishment of a station, and defendant insists that this question is subject to supervision and control by the state railway commission.

It also points out that, until the state railway commission has ordered that a station be established at the point in question and prescribes rates for the transportation of freight thereto and therefrom, it is powerless under the law to establish the railroad facilities required by the order of the district court. It argues that plaintiffs' demands are unreasonable and unjust, and that a compliance therewith would unreasonably interfere with the operation of its railroad and in the performance of its duties to the public as a common carrier, and that the act in question does not comtemplate that a carrier should maintain a side-track at a place in the open country remote from stations, nor that it should accept and deliver freight at places other than a station.

The intent and purpose of the statute under which the action is brought is ''to compel railroad companies of Nebraska to afford and give to all persons and associations reasonable and equal terms, service, facilities and accommodations for the transportation and terminal handling of merchandise, produce, commodities and other property of every kind and description.'' Although statutes of this nature were enacted before the constitutional amendment providing for a state railway commission, this section of the act has been frequently amended by the legislature, and finally revised in Laws 1913, ch. 138. It seems clear that it was not the purpose of the legislature by the re-enactment and amendment of this section to encroach upon the province of the state railway commission. The powers and duties of the commission include ''the regulation of rates, service and general control of common carriers.'' While the Constitution authorizes the legislature to provide by law how these powers and duties of the commission shall be exercised, it was clearly not intended that the legislature should confer the general power to regulate rates, service or control generally of common carriers upon some other body or jurisdiction. If the legislature under the Constitution could confer

jurisdiction upon the courts either to regulate rates or service or to control generally common carriers, it follows that it could confer jurisdiction to do all of the things enumerated in the railway commission statute, and the constitutional provision establishing a railway commission would then become nugatory. It is admitted by plaintiffs in their reply that "there is no station located, and that there is no rate in force for transporting freight to or from said place (West Benson), and that the state railway commission has not ordered or directed a station to be established at said place, nor prescribed or attempted to prescribe for the transportation of freight to or from the place." And it is contended by defendant, and seems to be fairly established by the evidence, that the place where plaintiffs are desirous of having the side-track established is outside of any incorporated city or village, and is in the open country at a point two miles distant from the nearest station or side-track, and is about midway between Dodge street station and Irvington station, those being the nearest points at which freight is accepted or delivered by defendant railway company, and that there are no rates in force or effect to the point where plaintiffs demand that a side-track be established, and the state railway commission has not authorized or directed the establishment of such side-track or the accepting or delivering of freight at such place.

Where there is attempted discrimination between persons and associations, and a person or association is not allowed "reasonable and equal terms, service, facilities and accommodations," the statute in question affords proper and prompt redress by the courts. But when the question is whether a community or locality is properly served by the railroad company, the question of rates is involved, and many other questions and conditions that affect generally all the service afforded by the railroad company, not only at that locality, but in other localities also, and such questions are

peculiarly within the province of the state railway com-
mission. It is urged by the plaintiffs that section 5978,
Rev. St. 1913, indicates, among other things, that the
courts are expected to compel the construction of side-
tracks at points where no stations have been established,
but we do not so construe the act in question.

Section 5978, Rev. St. 1913, among other things, pro-
vides: "Every railroad company or corporation own-
ing or operating a railroad in the state of Nebraska
shall afford reasonable and equal terms, service, facili-
ties and accomodations to all persons and associations
who are engaged or desire to engage in the operation
of grain elevators or any other industry, or in the
handling or shipping of merchandise, produce, commodi-
ties or other property, at, near or contiguous to any
railroad or any station of its road; and such person or
association may make application to said railroad com-
pany requesting it to construct, equip and maintain a
branch side-track of suitable length and grade within
four feet of the outer edge of its right of way adjacent
to and opposite the located or proposed industry, and in
all cases as near the located or proposed industry as
may be necessary to permit the loading and unloading
of cars and the convenient and economical handling of
the commodities in which such person or association is
engaged; or such persons or association, if they desire
to construct side-tracks for terminal facilities upon prop-
erty owned or controlled by them, may make application
to connect such tracks with the tracks of said railroad
company so as to permit the loading and unloading of
cars from side-tracks on the property of such person or
association."

If one person or association at a station already
established is allowed a side-track to its elevator, the
railroad company should, under similar conditions and
circumstances, allow a competitor a side-track at the
same station. These side-tracks may be at the station,
that is, at the regular stopping place of trains, but, even
if they are so far removed from the stopping place

of the trains as to raise the question as to whether they are at the station, still the company should not refuse privileges to one individual or association which it allows to others similarly situated. The use of the word railroad in this connection and in legislation in regard to the powers and duties of the state railway commission is therefore capable of being given a reasonable construction without conflicting with the purpose and spirit of either the statute or of section 19A, art. V of the state Constitution, which in creating the railway commission, among other things, provides: "The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the legislature may provide by law." It seems clear to us that the object of plaintiffs' action is not to prevent discrimination between persons and associations, but to regulate the service of the railroad company, and is therefore entirely within the jurisdiction of the state railway commission.

The judgment of the district court is reversed, and the action dismissed.

REVERSED AND DISMISSED.

LETTON, J., not sitting.