STATE, EX REL. CHRISTIAN A. SORENSEN ET AL., APPELLEES, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET AL., APPELLANTS.

FILED JUNE 24, 1924. No. 23847.

1. **Carriers:** DISCRIMINATION. At common law a common carrier of goods or passengers was under no obligation to treat all persons equally, but might grant one individual an unreasonably low rate or even carry for him without making any charge whatever.

2. ———: ———. Section 7, art. X of the Constitution of Nebraska, provides: "The legislature shall pass laws to correct abuses and prevent unjust discrimination and extortion in all charges of express, telegraph and railroad companies in this state." Not all discriminations are prohibited by this section.

3. ———: ———. The provisions of section 7, art. X of the Constitution, are designed to take away from the common carriers named therein the power of arbitrary selection of persons as the objects of their favor or disfavor.

4. ———: ———: POWER OF LEGISLATURE. It is competent for the legislature within reasonable limits to determine what are proper preferences or discriminations which may lawfully be made by common carriers, and, unless it is manifest that its action in this respect is a clear violation of the Constitution, the courts may not interfere.

5. ———: ———: CONSTRUCTION OF STATUTE. A statute which allows the granting of special favors or preferences to any class of people by common carriers is to be strictly construed.

6. ———: FREE PASS LAW: CONSTITUTIONALITY. Chapter 160, Laws 1923, which adds to the classes exempted from the restrictive provisions of the "free pass law" ministers of religion, inmates of charitable institutions and charitable workers, is not void as being in violation of section 7, art. X of the Constitution.

7. ———: ———: ———. Chapter 160, Laws 1923, operates alike on all persons in the same class within the state, is not a local or special law, and is not unconstitutional for that reason.

8. **Constitutional Law: CONSTRUCTION.** In construing the quoted section of the Constitution, the court will consider its history; the development of the evil sought to be restrained by its provisions; that since the enactment of the "free pass law" the language of the section has been construed as to its meaning and scope, and acted upon, by the legislature and by the courts, and that a constitutional convention held since such construction made no change therein.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Reversed and dismissed.*

*Byron Clark, Jesse L. Root, Reavis & Beghtol, J. W. Weingarten, C. W. Krohl, N. H. Loomis, J. A. C. Kennedy, Wymer Dressler, E. P. Holmes, Robert D. Neely, Yale C. Holland, Guy C. Chambers, C. A. Magaw* and *Thomas W. Bockes,* for appellants.

*C. A. Sorensen* and *F. L. Bollen, contra.*

*R. M. Switzler, amicus curiæ.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY, GOOD, and THOMPSON, JJ.

LETTON, J.

This action was brought by the plaintiff on behalf of himself and all other persons similarly situated. It is alleged that the attorney general of the state had been requested to prosecute the same but had refused, but that he makes no objection to the action being brought in the name of the state on the relation of the plaintiff. The purpose of the suit is to enjoin and prohibit the defendant railroad companies from giving free passes or reduced transportation to ministers of the gospel and persons engaged in eleemosynary and charitable work, and to have the court declare chapter 160, Laws 1923, unconstitutional and void. Separate demurrers to the petition were overruled by the district court. Defendants elected to stand upon their demurrers, and, refusing to proceed further, the court found the allegations of the petition to be true, and decree was rendered declaring that the law in question was unconsti-

250          NEBRASKA REPORTS.          [Vol. 112

State, ex rel. Sorensen, v. Chicago, B. & Q. R. Co.

tutional and void, and restraining the issuance of free passes or reduced transportation to the classes of persons named in the act. Defendants have appealed.

The petition alleges that, unless restrained by the court, the defendant railroad companies will establish, promulgate and charge passenger fares on their lines within the state by dividing all who have occasion to travel as passengers into two classes; those who are not ministers of the gospel, nor engaged in charitable or eleemosynary work, constituting the first class, who are required to pay fare; and those who are ministers of the gospel or engaged in charitable or eleemosynary work and required to pay only a half or reduced fare, constitute the second class; that there is no reasonable basis for this classification; that persons within the second class occupy the same space in passenger coaches as all other persons; that persons within this class do not travel in groups or more extensively than others; that the expense to the railroad corporation of transporting both classes is equal; that such persons have rendered no greater service to the railroads than others, and that such class is no more entitled to receive free or reduced transportation than other classes of people, such as farmers, school-teachers, newspaper editors and writers, common laborers, or lawyers; that the proposed action will decrease the net earnings of the defendants and bring about an increase in the passenger rates to persons not within the favored class; that the amended law is not so framed as to extend to and embrace equally all persons in like situation and circumstances, and is capricious and arbitrary, since it makes the accepting of free passes and reduced transportation an innocent and harmless act by ministers of the gospel or persons engaged in charitable and eleemosynary work, but a crime punishable by fine and imprisonment when accepted by all other persons; that chapter 160, Laws 1923, is unconstitutional and void because: (a) It contravenes section 7, art. X of the Constitution. (b) It contravenes section 18, art. III of the Constitution, providing that the legislature shall not pass local or special laws

"granting to any corporation, association or individual any special or exclusive privileges, immunity or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted." (c) It contravenes that part of section 1, art. XIV of the Constitution of the United States, which provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, * * * nor deny to any person within its jurisdiction the equal protection of the laws."

Defendants each demurred on the grounds: (1) That the petition did not state facts sufficient to constitute a cause of action; (2) that there is defect of parties plaintiff; and (3) that plaintiff has not legal capacity to maintain the action. We prefer to deal with the case upon its merits rather than upon the other grounds of demurrer.

The question is whether the amendatory statute violates the provisions of the Constitution. At common law a common carrier of goods was under no obligation to treat all customers equally. Its obligation was to accept and carry all goods delivered to it for carriage on being paid a reasonable compensation, unless it had some reasonable excuse for not doing so, and if the carrier refused to accept such goods an action might be brought against it for so refusing. If the shipper paid under protest a sum which was unreasonable, he might recover back the surplus in an action for money had and received, as having been extorted from him. There was nothing in the common law to prevent a carrier from giving individuals an unreasonably low rate or even carrying without charge. *Great Western R. Co. v. Sutton*, 4 L. R. 1869, Eng. & Irish App. Cas. 226. In a short time after railroads came into being they practically monopolized all methods of land transportation, and it was found necessary to establish rules and regulations for the protection of the public. Undue preferences were prohibited by statute, and common carriers became bound to charge all persons for whom they carried goods under like circumstances equally. The courts of England, in passing

upon questions arising under the railway and canal acts, are careful to point out that all preferences were not forbidden by law, but only *"undue preferences,"* and have upheld, under certain circumstances, rates and charges which result in preferences being given. In *Inverness Chamber of Commerce v. Highland R. Co.*, 11 Railway & Canal Traffic Cas. (Eng.) 218, Lord Darling said: "It seems to me that, there being to some extent a preference of one trader over another, the whole question comes to be whether that preference is undue, and that is a question purely of fact. There is, in my opinion, a strong presumption that when a preference of that kind is offered and given to all and sundry upon purely business considerations, without any element of caprice or arbitrary choice about it, the preference is not undue." In *Phipps v. London & N. W. R. Co.*, 1892, 2 Q. B. (Eng.) 229, the burden of proof is held to be on the railroad company to show that the lower charge does not amount to "an undue preference."

Abuses arose in the United States similar to those that occurred in England, though perhaps greater in degree. The interstate commerce act of 1887, and the several railway commission acts in the states, were the result of the desire to put an end to such conditions. The interstate commerce act provides that all charges made for service by the railroad "shall be reasonable and just, and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful," and, also, provides that if any carrier subject to the act shall charge, demand, collect or receive a greater or less compensation for any service rendered, or to be rendered, in the transportation of persons or property than it charges, collects, demands or receives from any other person or persons for doing a like or contemporaneous service in the transportation of a like kind of traffic, under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is therein prohibited and declared to be unlawful. Section 14, ch. 90, Laws 1907, railway commission act, now section 5509, Comp.

St. 1922, is almost an exact copy of this section, which is section 1, ch. 104, 24 U. S. St. at Large, p. 379. The act recognized as proper and just certain preferences and discriminations which had been customary. Section 22 of the interstate commerce act also provides: "That nothing in this act shall apply to the carriage, storage, or handling of property free or at reduced rates for the United States, state, or municipal governments, or for charitable purposes, or to or from fairs and expositions for exhibition thereat, or the issuance of mileage, excursion, or commutation passenger tickets; nothing in this act shall be construed to prohibit any common carrier from giving reduced rates to ministers of religion; nothing in this act shall be construed to prevent railroads from giving free carriage to their own officers and employees, or to prevent the principal officers of any railroad company or companies from exchanging passes or tickets with other railroad companies for their officers and employees; and nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies: Provided, that no pending litigation shall in any way be affected by this act." By amendments made by the Act of March 1889, section 9, ch. 382, 25 U. S. St. at Large, p. 862, the prohibition was also removed as to granting preferences to "the free carriage of destitute and homeless persons transported by charitable societies, and the necessary agents employed in such transportation, * * * to municipal governments for the transportation of indigent persons, or to inmates of the national homes or state homes for disabled volunteer soldiers and of soldiers' and sailors' orphan homes, including those about to enter and those returning home after discharge, under arrangements with the boards of managers of said homes."

Having thus traced to some extent the history of the law prohibiting unjust discrimination by carriers, we come to the precise question involved in this case. Section 7, art. X of the Constitution of Nebraska provides: "The legisla-

254 NEBRASKA REPORTS. [Vol. 112

State, ex rel. Sorensen, v. Chicago, B. & Q. R. Co.

ture shall pass laws to correct abuses and prevent unjust discrimination and extortion in all charges of express, telegraph and railroad companies in this state, and enforce such laws by adequate penalties to the extent, if necessary for that purpose, of forfeiture of their property and franchises." In 1907 the legislature enacted chapter 93, Laws 1907, commonly known as the "free pass law." Comp. St. 1922, sec. 5440. This act made the issuance of any free ticket, free pass, or free transportation in any form for the transportation of any passenger or passengers unlawful, except to persons within certain classes which are in the act designated and limited. At the same session, by the railway commission act, it was made unlawful for any person not included within such classes to accept or use any such free transportation. The bill (S. F. 2) for the free pass act was substantially copied from the provisions of the interstate commerce act and contained provisions allowing preference to ministers of religion and charitable workers, but these were eliminated in passing through the legislature.

In 1923 the legislature, by chapter 160, amended this law by restoring the omitted provisions exempting "ministers of religion, traveling secretaries of Railroad Young Men's Christian Associations, inmates of hospitals and charitable and eleemosynary institutions, and persons exclusively engaged in charitable and eleemosynary work," from the prohibitions of the statute. It is the validity and constitutionality of this amendment, and also the validity of an amendment, for the same purpose, made by the same act, to section 14 of the railway commission act (Comp. St. 1922, sec. 5509) that is attacked by this proceeding. The objections made to this amendment could with equal propriety and reason be made to several provisions of the original act.

It will be noted that the provisions of the Nebraska Constitution are directed against *"unjust* discrimination." The question as to the proper construction of the provisions of the interstate commerce act prohibiting discrimination or preferences came before the United States supreme court

for decision. In the case of *Interstate Commerce Commission v. Baltimore & O. R. Co.*, 145 U. S. 263, 278, it was held, as it had been by the English courts, that it is not all discriminations or preferences which fall within the inhibition of the statutes, but only such as are undue or unreasonable, and it was said: "The object of section 22 was to settle beyond all doubt that the discrimination in favor of certain persons therein named should not be deemed unjust. It does not follow, however, that there may not be other classes of persons in whose favor a discrimination may be made without such discrimination being unjust. In other words, this section is rather illustrative than exclusive. Indeed, many, if not all, the excepted classes named in section 22 are those which, in the absence of this section, would not necessarily be held the subjects of an unjust discrimination, if more favorable terms were extended to them than to ordinary passengers. Such, for instance, are property of the United States, state or municipal governments; destitute and homeless persons transported free of charge by charitable societies; indigent persons transported at the expense of the municipal governments; inmates of soldiers' homes, etc., and ministers of religion—in favor of whom a reduction of rates had been made for many years before the passage of the act."

In *United States v. Oregon R. & N. Co.*, 159 Fed. 975, a number of specific acts of discrimination are shown to have been sustained by the courts as not being unlawful or "unjust."

The whole matter is one of degree, and, unless a discrimination permitted by the legislature plainly violates the Constitution, the courts will not declare the act void. Again, we see no reason why if a railroad company desires to foster, encourage and contribute to a charitable enterprise, or to one designed for the public weal and welfare, it may not do so. Maitland, in "Collected Essays," says: "If the law allows men to form permanently organized groups, those groups will be, for common opinion, right-and-duty bearing units; and if the lawgiver will not openly treat them as

such he will misrepresent, or, as the French say, he will 'denature' the facts: in other words, he will make a mess and call it law." We see no reason why a railroad corporation may not, to a reasonable extent, donate funds or services to aid in good works.

In a large majority of the states of the Union statutes permitting the issuance of free passes to ministers of religion are in effect. The Constitution of this state recites that religion, morality and knowledge are essential to good government. As a general rule the legislatures of the several states have recognized that religious and charitable organizations are potent factors for good, and valuable instrumentalities for the public welfare. In fact, were it not for organizations of this nature, the moral and domestic virtues might largely escape inculcation in this age of haste and hurry and relaxation of parental discipline. The exemption from taxation of the property of religious and charitable institutions by constitutions or by statutes is another manifestation of this spirit of philanthropy.

In *Church of The Holy Trinity v. United States*, 143 U. S. 457, 468, the supreme court held that the contract labor law did not apply to a contract between a nonresident alien and a religious society whereby he engages to remove to the United States and serve the society as its rector. In the opinion by Justice Brewer it is said: "If we examine the constitutions of the various states we find in them a constant recognition of religious obligations. Every constitution of every one of the forty-four states contains language which either directly or by clear implication recognizes a profound reverence for religion and an assumption that its influence in all human affairs is essential to the well-being of the community. * * * If we pass beyond these matters to a view of American life as expressed by its laws, its business, its customs and its society, we find everywhere a clear recognition of the same truth." After pointing out numerous instances, he concludes: "These, and many other matters which might be noticed, add a volume of unofficial declarations to the mass of organic utterances that this is a Christian nation." We conclude that

State, ex rel. Sorensen, v. Chicago, B. & Q. R. Co.

there exists sufficient ground for a classification by the legislature placing ministers of the gospel and charitable workers in a different class from ordinary passengers.

Adverting now to another contention of appellee: There is a clear distinction between statutes such as this and statutes imposing a duty or obligation upon a common carrier to carry certain designated classes at reduced rates or requiring such classes to be carried gratuitously. *Lake Shore & M. S. R. Co. v. Smith*, 173 U. S. 684, cited and quoted by appellee, was a case involving the validity of a law of the state of Michigan which required the sale at reduced rates of 1,000-mile tickets. The railroad complained of the law as depriving it of the equal protection of the laws, and as taking its property without due process of law. In the opinion, language is used which, taken apart from its context, and without considering the exact question involved, may be considered to condemn the granting of free passes or of reduced rates under any circumstances; but, when the question actually before the court is considered and compared with other decisions of the same court, we are of the opinion that such is not the proper conclusion to be drawn. See, also, *Interstate Consolidated Street R. Co. v. Massachusetts*, 207 U. S. 79; *Sutton v. New Jersey*, 244 U. S. 258; *United States v. Chicago & N. W. R. Co.*, 127 Fed. 785; *State v. Chicago, M. & St. P. R. Co.*, 118 Minn. 380; *Commonwealth v. Interstate Consolidated Street R. Co.*, 187 Mass. 436; *United States v. Oregon R. & N. Co.*, 159 Fed. 975. These are all later cases than *Lake Shore & M. S. R. Co. v. Smith, supra.* We believe those cases are better considered than other cases cited by appellees. In *State v. St. Louis, S. W. R. Co.*, 197 S. W. (Tex. Civ. App.) 1006, a similar statute was attacked, but was held valid so far as it permitted the issuance of free passes to eight different classes of people, among which are indigent poor, when applied for by any religious or charitable organization, and Confederate veterans admitted to Confederate homes. It is difficult to see just why the court of appeals drew the line between these classes and some of the other classes, and yet the extremes are quite far apart.

The complaint that the issuance of free passes to ministers or charitable workers will bring about an increase in passenger rates to persons not within the favored class, we think is not borne out by the facts. We can take judicial notice of that which is common knowledge. Compared with the population of the state of Nebraska, or with the number of passengers traveling upon the railroads, the number embraced within the favored classes is exceedingly small. We are of the opinion that if the railroad companies sought to increase rates of fare on the ground that the added cost of transporting ministers or charitable workers make this necessary, they would find but cold comfort from the railway commission or from the legislature.

It may properly here be said that the granting of special favors or preferences to any class of people by common carriers is to be closely scrutinized and should not be unduly extended. The public suffered from such abuses many years before regulatory acts were passed. In any case where the provisions of the Constitution designed to prevent the granting of special privileges, favors or preferences are clearly violated by the legislature, it is the imperative duty of courts to declare such enactments void. As a matter of public policy, in the judgment of the writer, but few classes of persons should be accorded special privileges upon the railroads of the country, and these classes should be in the main connected with the operation of the roads, or with the protection of the public. I am inclined to think that the courts have gone far in upholding legislation permitting some classes to ride free, and that the privilege granted by some of the statutes might well be curtailed by legislation. This is not said as expressing the views of other members of the court.

There is nothing in the amendatory statute attacked which in any wise violates the principles announced in *State v. Chicago, B. & Q. R. Co.*, 71 Neb. 593; *State v. Union P. R. Co.*, 87 Neb. 29; *Western Union Telegraph Co. v. Call Publishing Co.*, 44 Neb. 326.

We are also of the opinion that the law in question is not a local or special law. It is a general act applying to all

persons within the classes designated and is not invalid upon this ground. *Allan v. Kennard,* 81 Neb. 289.

It is an important fact that since the free pass law has been upon the statute book, although the classification made therein as to some of the classes of persons who are exempted from the prohibition in the act seems closer to the line than that in question here, another constitutional convention has been held. The members of this convention, fresh from the people, made no change in this constitutional provision. Successive legislatures also have met and also have made no further restrictions. These facts indicate that the people themselves, through their duly elected representatives, both in the constitutional convention and in the legislature, are satisfied with, and have acquiesced in, the construction given by the legislature and by the courts to the effect that discriminations of this nature are not unjust.

The judgment of the district court is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.

Note—See Carriers, 10 C. J., secs. 775, 1079, 1083, 1091, 1149—Statutes, 36 Cyc. p. 992—Constitutional Law, 12 C. J., secs. 63, 65.