STATE OF NEBRASKA EX REL. STATE RAILWAY COMMISSION, PLAINTIFF, v. JAMES D. RAMSEY, AS DIRECTOR OF AERONAUTICS OF THE STATE OF NEBRASKA, ET AL., DEFENDANTS.

37 N. W. 2d 502

Filed May 13, 1949. No. 32576.

*James H. Anderson*, Attorney General, and *Bert L. Overcash*, for plaintiff.

*Peterson & Devoe*, for defendant.

*Beynon, Greenamyre & Hecht*, amicus curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Original action by plaintiff, State of Nebraska ex rel. State Railway Commission, against defendants, James D. Ramsey, as Director of Aeronautics of the State of Nebraska, Department of Aeronautics of the State of Nebraska, and W. W. Cook, D. D. Mapes, Harold N. Jessen, Wendell Harding, M. M. Myers, as members of Nebraska Aeronautics Commission, to secure an adjudication that LB 247, Sixtieth Session of Nebraska Legislature, (§§ 3-109 and 75-201, R. S. Supp., 1947) is invalid; that the State Railway Commission has general control of intrastate common carriers by air, including regulation of rates and service; and to secure an injunction prohibiting defendants from taking or continuing any action or proceeding with reference to the regulation or control of common carriers by air. The answer admits the allegations of fact in the petition. The State Railway Commission will be designated commission.

Proceedings for a declaratory judgment extend to the validity of a statute when there is a justiciable, determinable controversy between parties in respect to rights thereunder. Such proceedings have frequently been sustained to determine disputes as to the validity of statutes. §§ 25-21,149 to 25-21,164, R. S. 1943; Thorin v. Burke, 146 Neb. 94, 18 N. W. 2d 664.

The act of the Legislature challenged herein (LB 247,

Laws 1947, c. 9, p. 71, appearing as §§ 3-109 and 75-201, R. S. Supp., 1947) amended sections 3-109, R. S. Supp., 1945 and 75-201, R. S. 1943, and contains these provisions:

"The Department of Aeronautics shall exercise general control over all aeronautics within this state, including the regulation of rates and services in connection with aeronautics for hire. It may (1) perform such acts, (2) issue and amend such orders, (3) make, promulgate, and amend such reasonable general or special rules, regulations, and procedure, (4) establish such minimum standards, (5) fix, modify, annul or otherwise revise such schedules of rates or services, and (6) permit, certify, prohibit or suspend such intrastate operations of aircraft, consistent with the provisions of this act, as it shall deem necessary to carry out the provisions of this act and to perform its duties hereunder; * * *.

"The State Railway Commission shall have the power to regulate the rates and services of, and to exercise a general control over, all railroads, express companies, car companies, sleeping car companies, freight and freight-line companies, and all other common carriers engaged in the transportation of freight or passengers within this state; *Provided,* that the commission shall have and exercise no control over aeronautics, and sections 75-101 to 75-512 shall be construed to have no application to the transportation of persons or property by aircraft."

The position of the plaintiff is that the quoted parts of the act conflict with and violate the part of Article IV, section 20, of the Constitution of Nebraska, which provides: "* * * The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision." The Constitution includes among the powers

and duties of the commission the regulation of rates, service, and general control of common carriers as the Legislature may provide by law, but in the absence of specific legislation its powers and duties as enumerated are absolute and unqualified. The commission has administrative, legislative, and judicial powers. These were bestowed upon it by an independent part of the Constitution which created the commission, and not as an amendment to the executive, legislative, or judicial articles thereof. The Constitution, in the absence of specific legislation, is self-executing, and is to be liberally construed. Chicago & N. W. Ry. Co. v. County Board of Dodge County, 148 Neb. 648, 28 N. W. 2d 396; In re Yellow Cab & Baggage Co., 126 Neb. 138, 253 N. W. 80; Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756; Petersen v. Beal, 121 Neb. 348, 237 N. W. 146. This court has heretofore remarked concerning the "broad, far reaching, and important powers" of the commission. State ex rel. Quinn v. Marsh, 141 Neb. 436, 3 N. W. 2d 892. The commission is a regulatory body of constitutional origin not amenable to legislative interruption or limitation of its status or powers except by specific legislation, and, since the amendment to the Constitution creating it is an independent one, it is not construed as other sections of the article to which it has been assigned by the compiler. State ex rel. Shields v. Hall, 103 Neb. 17, 170 N. W. 173; Omaha & C. B. St. Ry. Co. v. City of Omaha, 125 Neb. 825, 252 N. W. 407.

The term "common carriers" includes all forms of transportation for hire, and the amendment providing for the commission was intended to control the common carrier business to which it relates at all times and under all developments. It was determined in this state more than half a century ago that a street railway company became a common carrier by undertaking the transportation of passengers for hire. Spellman v. Lincoln Rapid Transit Co., 36 Neb. 890, 55 N. W. 270, 38 Am. S. R. 753,

20 L. R. A. 316; East Omaha Street Ry. Co. v. Godola, 50 Neb. 906, 70 N. W. 491. Transportation is the important fact, and the form or method thereof is immaterial. Arkadelphia Milling Co. v. Smoker Mdse. Co., 100 Ark. 37, 139 S. W. 680. The commission since its creation has had jurisdiction and power of control by virtue of the Constitution when the problem presented involved regulation of public transportation service. In re Application of Chicago, B. & Q. R. R. Co., 138 Neb. 767, 295 N. W. 389; State v. Union Stock Yards Co., 81 Neb. 67, 115 N. W. 627. A Constitution is intended to meet and be applied to any conditions and circumstances as they arise in the course of the progress of the community. The terms and provisions of constitutions are constantly expanded and enlarged by construction to meet the advancing affairs of men. While the powers granted thereby do not change, they do apply in different periods to all things to which they are in their nature applicable. Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1, 24 L. Ed. 708; 11 Am. Jur., Constitutional Law, § 51, p. 660; 9 Am. Jur., Carriers, § 4, p. 430. These principles have been held to be applicable to transportation by air. "Transportation, as its derivation denotes, is a carrying across, and, whether the carrying be by rail, by water or by air, the purpose in view and the thing done are identical in result." Curtiss-Wright Flying Service v. Glose, 66 F. 2d 710, certiorari denied, 290 U. S. 696, 54 S. Ct. 132, 78 L. Ed. 599. See, also, Hotchkiss, The Law of Aviation, (2d ed.), § 45, p. 62; Fixel, The Law of Aviation, (3d ed.), §§ 372, 375, pp. 361, 364; McCusker v. Curtiss-Wright Flying Service, Inc., 269 Ill. App. 502. A statute of this state defines common carriers as any corporation or other carrier engaged in the transmission of messages or transportation of passengers or freight for hire. § 75-301, R. S. 1943. Common carriers by air are indistinguishable from other common carriers with respect to the policy of the law. Any person or organization

engaged in transportation by air for hire is a common carrier.

Until the act of 1947 (LB 247, §§ 3-109 and 75-201, R. S. Supp., 1947) jurisdiction over and the power to regulate and control common carriers by air was recognized as vested by the Constitution in the commission. The Legislature first acted with reference to aeronautics by directing the manner in which the commission should regulate the aircraft industry, principally as to certain safety matters, and directed the adoption of local rules similar to the federal rules in that regard, but made no mention of rates, charges, or general service of common carriers by air. Laws 1929, c. 34, p. 145. Six years later it created a Nebraska Aeronautics Commission, imposed an aviation gasoline tax, delegated certain administrative duties to the commission, but included nothing as to regulation of rates, service, and the general control of aeronautics. Laws 1935, c. 3, p. 59. Ten years after that it created a Department of Aeronautics, a Nebraska Aeronautics Commission, the office of director thereof, enlarged the duties of the commission especially as to airport development, but expressly again recognized and respected the constitutional jurisdiction of the State Railway Commission by a provision therein that whenever a hearing was to be held before the State Railway Commission with respect to any intrastate carrier operating aircraft, it should be its duty to notify the Department of Aeronautics of the time and place of the hearing to permit it to intervene and set up the interest of that department therein. Laws 1945, c. 5, p. 75. The State Railway Commission has granted authority to operate as common carrier by air; applications for certificates of convenience and necessity, by those who desire to operate as common carriers by air, have been made to and are pending before it; and the last revision made in March 1947, of its rules and regulations pertaining to aeronautics have not been changed and are in force to the extent of its authority.

The commission, under the Constitution, has original jurisdiction and sole power to grant, deny, amend, revoke, or transfer common carrier certificates of convenience and necessity.  In re Application of Effenberger, 150 Neb. 13, 33 N. W. 2d 296.  The rules and regulations concerning aeronautics promulgated after June 1948, and filed with the Secretary of State by the defendant, the Nebraska Aeronautics Commission, is the first time in more than 40 years that any agency of the government of Nebraska, other than the State Railway Commission, has claimed any jurisdiction to regulate and control common carriers.  Legislative and official interpretation, long acquiesced in, is entitled to weight in seeking the meaning of doubtful constitutional provisions.  State ex rel. Sorensen v. Chicago, B. & Q. R. R. Co., 112 Neb. 248, 199 N. W. 534; 16 C. J. S., Constitutional Law, §§ 32 to 35, pp. 70-75; Chadwick v. City of Crawfordsville, 216 Ind. 399, 24 N. E. 2d 937, 129 A. L. R. 469; Van Gilder v. City of Madison, 222 Wis. 58, 267 N. W. 25, 105 A. L. R. 244.

A determination of the meaning of the amendment of the Constitution creating the State Railway Commission (Art. IV., § 20), at the time it was adopted, will be decisive of the problem presented by this case.  First Trust Co. v. Smith, 134 Neb. 84, 277 N. W. 762.  The intent and understanding of its framers and the people who adopted it as expressed in the instrument is the main inquiry in construing it.  Baker v. Moorhead, 103 Neb. 811, 174 N. W. 430; Mekota v. State Board of Equalization and Assessment, 146 Neb. 370, 19 N. W. 2d 633; State ex rel. Johnson v. Marsh, 149 Neb. 1, 29 N. W. 2d 799.  The words of a constitutional provision will be interpreted and understood in their most natural and obvious meaning unless the subject indicates or the text suggests they are used in a technical sense.  The court may not supply any supposed omission, or add words to or take words from the provision as framed.  It must be construed as a whole, and no part will be rejected as

meaningless or surplusage, if it can be avoided. If the meaning is clear, the court will give to it the meaning that obviously would be accepted and understood by the layman. Mekota v. State Board of Equalization and Assessment, *supra;* State ex rel. Johnson v. Chase, 147 Neb. 758, 25 N. W. 2d 1. It is permissible to consider the facts of history in determining the meaning of language of the Constitution. State v. Sheldon, 78 Neb. 552, 111 N. W. 372; State ex rel. Johnson v. Chase, *supra.* It is also appropriate and helpful to consider, in connection with the historical background, the evil and mischief attempted to be remedied, the objects sought to be accomplished, and the scope of the remedy its terms imply. State ex rel. Sorensen v. Chicago, B. & Q. R. R. Co., *supra;* First Trust Co. v. Smith, *supra;* 12 C. J., Constitutional Law, § 43, p. 700.

The Legislature of 1883 obtained from the members of the Supreme Court an opinion as to the validity of a "railroad commission law" that: "The legislature have no power under the constitution to create railroad commissioners. The supervision of railroads by a commission would be proper, but the power must be conferred on executive offices already existing." In re Railroad Commissioners, 15 Neb. 679, 50 N. W. 276. The Legislature, after receiving this advice, proposed a constitutional amendment for a "board of railway commissioners" as a part of the executive department of government, without constitutional functions or power. Laws 1883, c. CVII, p. 378. It failed of adoption. A proposal of the Legislature of 1891 for an amendment providing for "three railroad commissioners" as a part of the executive department, "whose powers and duties shall be such as may be prescribed by law" was rejected by the voters. Laws 1891, c. 1, p. 63. A third attempt to amend the Constitution to secure "railroad commissioners" as executive officers, was submitted by the Legislature of 1895. Laws 1895, c. 107, p. 430. It was disapproved. Regulatory laws enacted in 1885 and 1887 (Laws 1885, c. 65,

p. 288; Laws 1887, c. 60, p. 540) were invalidated for defects in enactment. State v. Burlington & M. R. R. Co., 60 Neb. 741, 84 N. W. 254. There was no regulation in this field by any agency of government from 1901 (Laws 1901, c. 50, p. 403) until the adoption of the State Railway Commission Amendment (Art. IV, § 20). Many futile attempts to provide effective regulation and control of common carriers was the background for the proposal in 1905 (Laws 1905, c. 233, p. 791), and the adoption on November 6, 1906, of the amendment vesting constitutional powers, duties, and authority in the State Railway Commission as an independent, permanent agency endowed with executive, legislative, and judicial attributes, limited only as the Legislature may provide otherwise by specific legislation. The desire and necessity for a strong, regulatory, constitutional body is indicated by the practically unanimous vote of the Legislature in submitting the proposal, the endorsement thereof by the platforms of the three principal political parties, the thorough and favorable discussion of its merits throughout the state, and its adoption by a very large majority of the voters participating in the election. State ex rel. Thompson v. Winnett, 78 Neb. 379, 110 N. W. 1113, 10 L. R. A. N. S. 149. The pertinent legislative history confirms these views. The bill (Senate File 196) originally provided: "There shall be a State Railway Commission" and its "powers and duties * * * shall include *such* regulation of rates, service and general control of common carriers as the legislature *shall* provide * * *." (Emphasis supplied) Senate Journal 1905, pp. 405, 681. The language was changed before final approval by substituting "the" for "such" before the word "regulation"; "may" for "shall" preceding the word "provide"; and by adding the sentence "but in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this section." Senate Journal 1905, pp. 1277, 1481; Art. IV, § 20, Constitution of Nebraska. The substitutions and additions made clearly eliminate

any conclusion that it was intended that the powers of the commission should include only such regulations and control as the Legislature shall provide or permit by law. The language finally adopted positively provides that the powers of the commission shall include the regulation of all the enumerated matters with the right of the Legislature to control the manner in which the commission shall perform its independent constitutional duties, or to enter the field itself to the extent of "specific legislation." The conclusion is logical, if not inescapable, that the Legislature would not have proposed, and the people would not knowingly have approved, an addition to the Constitution creating a commission with power only to regulate and control common carriers to the extent and for the time provided or permitted by the Legislature, in view of the history attesting that the attempts at regulation by it had been disappointing and ineffective, and that the people had rejected three proposals of the Legislature to amend the fundamental law to provide for executive officers to regulate and control common carriers only as prescribed by it. The legislative record of the bill shows the type of activity which was comprehended by the word "specific." The House rewrote it to enumerate the "specific legislation." It was: To establish, modify, and enforce reasonable rates and charges for transportation of persons and freight; prevent discrimination and abuses; and adjust and determine controversies in respect to transportation facilities, charges, and discrimination. The House, by its draft, provided that the power of the commission should extend over all common carriers in the state; that it should have such other duties as the Legislature should confer upon it; and the Legislature should provide the method of enforcing its findings. House Journal 1905, p. 1036. The intention was that the commission should have authority to carry out this program in the absence of "specific legislation." That this was the legislative intention is indicated by the acts passed in the 1907 and

1909 sessions of the Legislature, as contained in chapters 74 and 75 of the statutes. The final draft of the bill as presented to the people retained the term "specific legislation," as expressing this purpose of the Legislature and of the people.

The amendment provides that the commission shall have constitutional authority to regulate common carriers "as the Legislature may provide by law," and "in the absence of specific legislation" the commission may exercise all such duties and powers. The right to regulate "as" the Legislature may provide means the right to regulate in the manner in which the Legislature provides. The word "as" is used in its adverbial sense as a relative adverb. In 6 C. J. S., As, p. 780, the text states: "In its purely adverbial sense, the word has been defined as meaning in like manner, in the manner in which, in the same manner, like, of the same kind, similar to; * * *." The word "specific" in the phrase "in the absence of specific legislation" is synonymous with the word "particular." The term implies a definite restriction on the kind and extent of legislation over common carriers which is permissible by the Legislature. It is defined in 58 C. J., Specific, p. 826 as follows: "Definite, or making definite; limited or precise; precisely formulated or restricted; tending to specify or make particular. Although the term is a relative one, it is limited to a particular, definite or precise thing, and hence is the very opposite of 'general'." It was not intended by the use of these words to authorize unlimited, broad, general legislation in reference to the control and regulation of common carriers. Bouvier's Law Dictionary defines general statutes as those "which relate to persons and things as a class." LB 247 by its terms includes all common carriers by air. It undertakes to legislate completely and generally with reference to that entire class of carriers.

The Legislature by the "Two-Cent Fare Act" fixed two cents a mile as the maximum passenger fare for transportation by railroad. Later it passed the "Railway

Commission Act" by which the commission was authorized to "regulate the rates and services of, and to exercise a general control over all railroads * * * and all other common carriers * * * within the state." A writ of mandamus was sought in State ex rel. Missouri P. Ry. Co. v. Clarke, 98 Neb. 566, 153 N. W. 623, to compel the commission to pass on the merits of a petition by relator for an increase in existing railroad rates for the transportation of passengers. The defense of the commission was it had no power to increase such rates because of the Two-Cent Fare Act. Relator insisted that power to increase passenger rates had been delegated to the commission by the Legislature in the passage of the Railway Commission Act. The court determined that the Two-Cent Fare Act was specific legislation, and the Railway Commission Act was general legislation. "It is in the absence of specific legislation that the state railway commission may exercise such authority. It follows that, since passenger rates were fixed by statute, authority of the state railway commission to increase them must be found in legislative action. * * * In the 'Two-Cent Fare Act' the legislature dealt with a specific subject limited to passenger rates. In the subsequent act relating to the state railway commission and conferring upon it authority over rates, the legislation is general. The specific provisions control * * *. The general power of the state railway commission, as applied to passenger traffic, is limited to rates below the maximum fixed by the two-cent fare law. The legislature, in specifically fixing a maximum passenger rate and in conferring generally upon the state railway commission power to regulate or abolish passenger rates, left the state railway commission free to change or abolish rates within the bounds thus set by the lawmakers." The court nearly twenty years later approved the description of specific as opposed to general legislation by the statement: "The distinction between specific and general legislation is drawn in State v. Clarke, 98 Neb. 566." In re Yellow Cab

& Baggage Co., *supra*. There have been many instances of specific legislation on subjects within the jurisdiction of the commission directing the manner in which it may exercise its power. Petersen v. Beal, *supra;* Rodgers v. Nebraska State Railway Commission, 134 Neb. 832, 279 N. W. 800; State v. Chicago & N. W. Ry. Co., 147 Neb. 970, 25 N. W. 2d 824; Chicago & N. W. Ry. Co. v. County Board of Dodge County, *supra*. Rivett Lumber & Coal Co. v. Chicago & N. W. Ry. Co., 102 Neb. 492, 167 N. W. 570, was a suit to compel the defendant to construct a sidetrack for the use of plaintiff by virtue of a statute purporting to give the court jurisdiction to hear and determine that kind of a proceeding, and to grant any appropriate relief. § 5978, R. S. 1913. Defendant contended the court was without jurisdiction: "* * * that the question is one for inquiry and control by the state railway commission." The court sustained the position of the defendant, reversed the judgment of the district court, and dismissed the case. It said: "While the Constitution authorizes the legislature to provide by law how these powers and duties of the commission shall be exercised, it was clearly not intended that the legislature should confer the general power to regulate rates, service or control generally of common carriers upon some other body or jurisdiction. If the legislature under the Constitution could confer jurisdiction upon the courts either to regulate rates or service or to control generally common carriers, it follows that it could confer jurisdiction to do all of the things enumerated in the railway commission statute, and the constitutional provision establishing a railway commission would then become nugatory. * * * It seems clear to us that the object of plaintiffs' action is not to prevent discrimination between persons and associations, but to regulate the service of the railroad company, and is therefore entirely within the jurisdiction of the state railway commission." That case was decided in 1918. The Constitutional Convention of 1920 gave much consideration to the part of the Constitution

involved in this case. Proc. Const. Conv., 1920, Vol. 2, pp. 1651, 1840, 1848, 1850, 1882, 2394, 2401 to 2408. The Public Service Corporations Committee reported to the convention overwhelming sentiment of the committee against changing the language of the Railway Commission Amendment, and the chairman of the committee said, "It was not the sense of the committee that the Legislature might give a city administration the right to regulate a carrier such as a street railway company, that is chiefly within the boundaries of the city," and near the close of the convention an unsuccessful attempt was made to specifically amend the Railway Commission provision "* * * giving the cities of the metropolitan class the right to regulate the service of street cars within the city limits." Proc. Const. Conv., 1920, Vol. 2, pp. 1843, 2548. The convention left the constitutional provision creating the commission and defining its jurisdiction in the identical language as adopted by the people in 1906. It is presumed that the members of that convention—nearly half of whom were lawyers—knew the interpretation made by the court, and that it would remain in effect on failure of any change in this part of the Constitution.

The question presented by this case is of vital importance. It is recognized that there is a presumption that a legislative act is valid and will not be adjudged invalid unless its invalidity has been plainly demonstrated. There is a strong inclination of the court not to interfere with the acts of other departments of government. However, the Constitution is the supreme law, and a limitation of power of all departments and all officials, and it is the duty and function of the court to trace the line which marks the limit of power, and to cause compliance with it.

The Legislature has no power to divest the State Railway Commission of its constitutional jurisdiction to regulate and control common carriers by air by transferring it to another body or jurisdiction. LB 247, Sixtieth Session of Nebraska Legislature, is invalid because it

violates the Constitution of the state. Defendants have no legal right to exercise control over or impose regulations on common carriers by air, and they should be enjoined from attempting to do so.

JUDGMENT FOR PLAINTIFF.

YEAGER, J., participating on briefs.