LANE et al. v. WHITAKER, Pros. Atty., et al.

(District Court, D. Connecticut. August 29, 1921.)

1. **Municipal corporations** ⊙⟳703(1)—**States, under police power, may regulate use of streets.**

Persons who invest in vehicles to be used in the public streets of cities or towns do so, and hold the property and the right to use it, subject to such reasonable regulations as the state in the exercise of its police powers may impose for the safety, convenience, and welfare of the public.

2. **Constitutional law** ⊙⟳235, 292—**Municipal corporations** ⊙⟳703(1)—**Connecticut Jitney Act held constitutional.**

Pub. Acts Conn. 1921, c. 77, defines a "jitney" as a public service motor vehicle operated on streets or highways in such manner as to afford a means of transportation similar to that of a street railway company and running on a regular route or between fixed termini. It makes operators of jitneys common carriers, subjects them to regulation by the state Public Utilities Commission, the same as street railroad companies, and requires them to obtain a certificate from the commission, after a hearing, specifying the route and that public convenience and necessity re-

⊙⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

quire their operation over such route. From the decision of the commission on an application for a certificate an appeal lies to the superior court. *Held*, that the act is not unconstitutional, as denying the equal protection of the laws, nor as taking the property of those affected without due process by conferring arbitrary power on the commission which permits it, in its discretion, to refuse certificates or to discriminate between applicants.

In Equity. Suit by Leslie Lane and others against Sheridan T. Whitaker, prosecuting attorney, and others. On motion by complainants for preliminary injunction. Denied.

This suit is instituted by the several complainants for an injunction seeking to restrain the prosecuting attorneys of the respective counties, the chief of police of the city of New Haven, and the superintendent of the state police of Connecticut, from enforcing a law recently enacted in the State of Connecticut, which makes it a penal offense for the complainants to carry on their business as jitney bus carriers. Chapter 77, Public Acts 1921, is found in the margin.[1]

---

[1] An act concerning public service motor vehicles operating over fixed routes.

"Be it enacted by the Senate and House of Representatives in General Assembly convened:

"Section 1. The term 'public service motor vehicle' shall include all motor vehicles used for the transportation of passengers for hire. The term 'jitney' shall include any public service motor vehicle operated in whole or in part upon any street or highway in such manner as to afford a means of transportation similar to that afforded by a street railway company, by indiscriminately receiving or discharging passengers, or running on a regular route, or over any portion thereof, or between fixed termini.

"Sec. 2. Every person, association or corporation owning or operating a jitney is hereby declared a common carrier and subject as such to the jurisdiction of the public utilities commission, and, while so operating, to such reasonable rules and regulations as said commission may prescribe with respect to routes, fares, speed, schedules, continuity of service and the convenience and safety of passengers and the public.

"Sec. 3. No person, association or corporation shall operate a jitney until the owner thereof shall have obtained a certificate from the public utilities commission specifying the route over which such jitney may operate and the service to be furnished, and that the public convenience and necessity require its operation over such route. Such certificate shall be issued only after written application for the same has been made. Upon receipt of such application said commission shall fix a time and place of hearing thereon, which shall be in a town within which such route or a part thereof is proposed, and shall give notice of the pendency of such application and of the time and place of hearing thereon to such applicant, the mayor of the city, the warden of the borough or the first selectman of each town in or through which the applicant desires to operate, and to any common carrier operating over any portion of such route or over a route substantially parallel thereto, and public hearing held thereon. Any town, city or borough within which, or between which and any other town, city or borough in this state, any such common carrier is furnishing service, may bring a written petition to the commission in respect to routes, fares, speed, schedules, continuity of service and the convenience and safety of passengers and the public. Thereupon the commission shall fix a time and place for a hearing upon such petition, and shall mail notice thereof to the parties in interest and give due notice thereof at least one week prior to such hearing. The commission may amend or revoke any certificate.

"Sec. 4. The owner or operator of every jitney shall display in a conspicuous place therein such certificate or a certified copy thereof.

"Sec. 5. Upon the granting of a certificate of necessity and convenience as hereinbefore provided for, the commissioner of motor vehicles shall have

The Connecticut Company, operating trolley lines in the territory affected by this transportation through jitney service, has appeared by intervention and is now a party to this suit.

Robert J. Woodruff and Arthur Klein, both of New Haven, Conn., for plaintiffs.

DeForest & Klein, of Bridgeport, Conn., for parties similarly interested.

George D. Watrous, of New Haven, Conn., and Walter C. Noyes, of New York City, for the Connecticut Co.

Arnon A. Alling, State's Atty., and Edwin. S. Pickett, Pros. Atty., both of New Haven, Conn. (Joseph F. Berry, of Hartford, Conn., and Seth W. Baldwin, of New Haven, Conn., of counsel), for defendants.

William F. Healey, Atty. Gen., of Connecticut, for superintendent of police.

Before MANTON, Circuit Judge, and THOMAS and KNOX, District Judges, holding the court pursuant to section 256 of the Judicial Code (Comp. St. § 1233).

MANTON, Circuit Judge (after stating the facts as above). The plaintiffs have been engaged in the business of operating public motor vehicles in the city of New Haven and own motor busses for this service. They therefore have a property investment in this equipment. They charge a fare to the passengers carried by them. The defendants, except the Connecticut Company, are public officials who have as their duty the enforcement of the statute which is here considered. The Connecticut Company is interested in the litigation for the reason that it has franchise grants and runs trolley cars along the streets of New Haven, and is now in competition with the plaintiffs' jitney busses.

[1] The streets are the property of the public. Davis v. Mass., 167 U. S. 43, 17 Sup. Ct. 731, 42 L. Ed. 71. They are under the control of the public, and therefore subject to the police powers of the state,

jurisdiction over the registration of any jitney and over the licensing of its operator, its lighting, safety and sanitary conditions.

"Sec. 6. Every jitney shall carry markers to be furnished by the motor vehicle commissioner, which markers shall indicate that such vehicle is licensed for jitney service.

"Sec. 7. Any person, association or corporation aggrieved by any act or order of the public utilities commission may appeal to the superior court in the same manner and with the same effect as any person, association or corporation may appeal from orders relating to street railway corporations.

"Sec. 8. Any person or the officers of any association or corporation who shall violate any order, rule or regulation adopted or established under the provisions of this act or any provision hereof, shall be fined not more than one hundred dollars or imprisoned not more than sixty days or both.

"Sec. 9. Upon the passage of this act the public utilities commission is authorized to make such rules and regulations, to hold hearings and issue such certificates as may be required under the provisions of this act. Any such certificate shall not become effective until ninety days after the passage of this act.

"Sec. 10. The provisions of section 9 of this act shall take effect from its passage; all other provisions of this act shall take effect ninety days after its passage."

excepting where the power is delegated by statute upon a municipality or other agency. Hendrick v. Maryland, 235 U. S. 611, 35 Sup. Ct. 140, 59 L. Ed. 385; Nolen v. Riechman (D. C.) 225 Fed. 812. The right to exercise the police power is a continuing one, and may be exercised so as to meet the ever-changing conditions and necessities of the public. Those who make investment for this purpose, as the plaintiffs, do so and hold their property and the right to use it subject to such other and different burdens as the Legislature may reasonably impose, for the safety, convenience, and welfare of the public. The state Legislature may regulate the use, by automobiles and motor cars, of the highways of the state. Hendrick v. Maryland, 235 U. S. 611, 35 Sup. Ct. 140, 59 L. Ed. 385. It may also authorize municipalities to regulate the use of streets by vehicles and may exclude vehicular traffic. Barnes v. Essex Co. Park Comm., 86 N. J. Law, 141, 91 Atl. 1019.

[2] The Legislature of the state of Connecticut by the enactment referred to (chapter 77 of the Public Acts of 1921) provided for the use of the highways through the granting of licenses for persons situated as are the plaintiffs. It declared the operation of the jitney to be that of a common carrier, and subjected persons or corporations so operating jitneys to the restriction of the Public Utilities Commission. It provided that reasonable rules and regulations should be made by the commission with respect to routes, fares, speeds, schedules, continuity of service, and the convenience and safety of passengers and the public. It required the person, association, or corporation to obtain a certificate from the Public Utilities Commission, specifying the route over which the jitney may operate and the service to be furnished, and that the public convenience and necessity require its operation over such route. It required written application be made and notice to be given to the towns through which the route or part thereof was proposed, and to any common carrier operating over any portion of such route or over a route substantially parallel thereto. A public hearing is provided for, as is the method of giving notice thereof. The commission has authority to grant the certificate of necessity and convenience, also the licensing of its operation, and has jurisdiction over the lighting, safety, and sanitary conditions to prevail. Provision is then made for an applicant who feels aggrieved by the action of the Public Utility Commission to appeal to the superior court of the state in the manner provided for in such appeals from orders relating to street railway corporations for a violation of any order or regulation adopted or established under the provision of the act. A fine of $100 or imprisonment for not more than 60 days or both is provided for a breach of the act. The Public Utilities Commission is authorized to make such rules and regulations; to hold hearings and issue certificates as may be required under the provisions of the act.

In this complaint the constitutionality of this act is questioned. The superior court of the state has held the act constitutional. Derby Bus Corp. v. Whittaker et al., decided January 21, 1921, in an opinion filed by Judge Keeler. It is claimed that the statute violates the federal Constitution for the following reasons:

First, that the act confers arbitrary powers on the Public Utilities Commission, and permits the commission to discriminate against the plaintiffs, and therefore denies to them the equal protection of the laws; second, the statute constitutes an unlawful delegation of legislative powers to the administrative body; third, that it is unconstitutional, and violates the due process of law guaranteed by the Fourteenth Amendment, in that it confers an unregulated discretion and arbitrary power upon the Public Utilities Commission to grant or refuse or revoke a license; fourth, the statute in not requiring the commission to grant a hearing in the issuance, refusal, or revocation of a license, denies due process of law.

We think the several objections urged as to the constitutionality of the act are not well founded. As to the first, the claim is that, because the statute provides that all jitney busses are common carriers and shall be subject to the jurisdiction of the Public Utilities Commission, it discriminates against the plaintiffs. The citizen has the right of travel upon the highways, and may transport his property thereon in the ordinary course of life and business; but this is a very different thing than permitting the highway to be used for commercial purposes, as a place of business, for private gain, in running jitney busses. The right, common to all, to the use of highways, is the ordinary use made thereof; but where, for private gain, a jitney owner wants a special and extraordinary benefit from the highway, to use it for such commercial purpose, the Legislature may, in the exercise of its police powers, wholly deny such use or it may permit it to some and deny it to others, and this is because of the extraordinary nature of such use. And where the Legislature grants the permission to use the highway, it may do so under regulations which are common to all applicants. They may grant, refuse, or revoke the license, and in so doing the Legislature may permit of rules and regulations when such use is granted. This it has done in the act in question, by providing that a body created under the law (the Public Utilities Commission) may make such rules and regulations and grant such license when public convenience and necessity require it.

It is essential that motor vehicles on the highway used for such purposes should do so with safety to the public, and that owners should contribute to the maintenance of the highways by such payments as may be required with such grant. In examining the act, we are satisfied that it is clear that the Legislature, in comprehensive terms, intended a regulation which is for the interest and convenience of the inhabitants of the localities which are on the proposed route. It left the granting or refusal of a license, and the regulations as to the sanitary conditions and safety of the public, with the Public Utilities Commission, and in conferring this power the Legislature kept well within the confines of its constitutional limitations. Pub. Service Comm. v. Booth, 170 App. Div. 590, 156 N. Y. Supp. 140.

As to the second, it is argued that the statute "purports to permit" this sovereign power (legislating) to be exercised at the arbitrary discretion and will of the administrative body. We find nothing in the

act in question which grants to the Public Utilities Commission purely legislative powers. The state could, as it did, grant to the Commission the right to provide rules applicable to the particular situation, and provided for the investigation of facts before granting a certificate of convenience and necessity, all with the view to making such orders as were just for the purposes of the act. A delegation of power to make rules and regulations does not breach the federal Constitution. Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; Interstate Commerce Comm. v. Goodrich Transit Co., 224 U. S. 194, 32 Sup. Ct. 436, 56 L. Ed. 729. Indeed, the Legislature might unite the legislative and judicial powers in the same body without violating the Fourteenth Amendment. Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150.

As to the third, we find no arbitrary power granted to the Public Utilities Commission to say that a certificate should not be granted to an applicant. The act provides that an examination may be held by the Utilities Commission to first ascertain the public necessity and convenience for the route in question and others, and the authority is granted to the commission to issue such license if it is satisfied with the requirement therefor. We are not concerned with what has been described, both on the argument and the briefs, as an arbitrary action on the part of the personnel of the commission. If there has been such arbitrary action, a remedy is provided for by an appeal to the superior court by the party feeling aggrieved thereby.

As to the fourth, the act provides for a hearing on the application for a license. If the application be denied, provision is made in the act for an appeal to the superior court. Full authority is vested in 'the superior court under the laws of the state of Connecticut to reverse and direct the Commission to carry out its mandate if the result on such appeal be different than that reached by the Commission. Thus due process of law is accorded to the applicant.

We think the act in question does not violate the federal Constitution and that this motion may not be granted.

Motion denied.