COUNCIL BLUFFS TRANSIT COMPANY, A CORPORATION,
APPELLANT, V. CITY OF OMAHA, A MUNICIPAL
CORPORATION, ET AL., APPELLEES.

49 N. W. 2d 453

Filed October 11, 1951.   No. 32878.

(717)

*Gaines, Shoemaker & Crawford,* for appellant.

*Edward F. Fogarty, Edward Sklenicka, Herbert M. Fitle,* and *James M. Paxson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

It will be necessary in this opinion to refer to the city of Omaha, Nebraska, hereinafter called Omaha, and to the city of Council Bluffs, Iowa, hereinafter called Council Bluffs. The Omaha & Council Bluffs Railway and Bridge Company operates through an agency agreement with the Omaha & Council Bluffs Street Railway Company. These corporations will be referred to re-

spectively herein as Bridge Company and Railway Company. The Council Bluffs Transit Company will be hereinafter called Transit Company.

So far as material here, Transit Company seeks a decree declaring that ordinance No. 16477 of Omaha is unconstitutional and void; that certain provisions of ordinance No. 14924 of Omaha are not applicable to or enforceable against this plaintiff and that they be declared discriminatory, unconstitutional, and void; and that Omaha be enjoined from enforcing said ordinances as to the plaintiff "* * * or from in any manner whatsoever interferring (sic) with the plaintiff or its representatives in the operation of its buses within the City of Omaha, Nebraska, in compliance with the orders of the Interstate Commerce Commission * * *" and for equitable relief.

Transit Company secured first a restraining order and then a temporary injunction protecting its operations pending the determination of the issues presented. Issues were made, and trial was had. The court decreed that the ordinances involved were valid and constitutional and enforceable against Transit Company, dissolved the restraining order and temporary injunction, and dismissed Transit Company's petition. Transit Company appeals. We affirm the judgment of the trial court.

The two ordinances involved are No. 14924, section 29-1.4(a), hereinafter referred to as No. 14924, and No. 16477.

Ordinance No. 14924 was adopted by Omaha in 1941, and so far as material here is: " "* * * It shall be unlawful for the driver of any auto bus to deviate from the route set forth by the permit granted by the City Council, except at either termini of such route, and in the event such driver so deviates, he shall return to said termini before resuming his running on such route, and, except in case any street or thoroughfare is blocked or obstructed, said vehicle shall be permitted to operate

temporarily, until, the obstruction or blockage is removed, over the best alternative route, subject to the direction of the City Council'."

· Ordinance No. 16477 so far as material here is: "No common carrier of passengers operating with motor buses between Council Bluffs, Iowa, and Omaha, Nebraska, on or before October 9, 1949, shall operate the said buses over any of the streets of the City of Omaha other than those specified by name or highway number in the certificate of the said carrier from the Inter-state Commerce Commission and those actually used by it on regular schedules on or before October 9, 1949." Ordinance No. 16477 was passed October 25, 1949, and by its terms became effective 15 days thereafter.

Omaha and Council Bluffs are neighbor cities on the Missouri River. For many years Bridge Company provided interstate transportation of passengers by streetcar between the two cities. Bridge Company and Railway Company, operating under the agency agreement, had intracity rights in both cities. The intracity rights in Council Bluffs terminated in 1948 and Transit Company was granted those rights. ·

Transit Company, Bridge Company, and Railway Company then applied to the Interstate Commerce Commission for temporary authority to operate as common carriers by motor vehicle for hire between Omaha and Council Bluffs. The commission granted temporary authority to Transit Company and Bridge Company to operate interstate motor bus lines as common carriers of "Passengers, between Omaha, Nebraska and Council Bluffs, Iowa, over U. S. Highway 75 and city streets." Railway Company's application was denied. We are here concerned with claimed rights of Bridge Company and Transit Company.

Omaha's numbered streets begin from the east. U. S. Highway No. 75 enters Omaha on Douglas Street, turns south at Thirteenth Street, and follows that route out of the city. The streets, whose use is here in dispute,

are to the west of Thirteenth Street in Omaha.

Bridge Company for many years turned its cars in interstate operation at Twentieth Street. Following the grant of the Interstate Commerce Commission authority, Bridge Company put on buses and turned them at Eighteenth Street, going west on Harney from Fourteenth to Eighteenth Streets, thence north to Farnam Street, thence east on Farnam Street to Tenth Street. Bridge Company did not have specific authority to make this routing, Omaha's position being that it had that right under existing franchise. Transit Company does not challenge that contention here. In any event, it is agreed that they had that express authority following the passage of ordinance No. 16477. Bridge Company then had turned first at Twentieth Street and later at Eighteenth Street in its interstate operation.

Following the grant of authority by the Interstate Commerce Commission, Transit Company commenced operations on September 15, 1948, making its turn on Fourteenth Street between Douglas and Harney Streets, having a day prior thereto applied to Omaha for authority to go west on Harney from Fourteenth to Eighteenth, thence north across Farnam Street to Douglas, and thence east to U. S. Highway No. 75.

On October 19, 1948, Omaha denied this application and by resolution granted temporary authority which required that the turn be on Fourteenth Street.

On August 24, 1949, Transit Company filed its application with Omaha for authority to operate on the identical route west of Fourteenth Street that was being then followed by Bridge Company. This application was denied on October 4, 1949.

On October 10, 1949, Transit Company commenced operations west of Fourteenth Street on the route covered by its application that had been denied six days before.

Omaha then passed ordinance No. 16477, the effect of which was to make Transit Company's operation west of Fourteenth Street a violation of the ordinance and to

permit Bridge Company's operations west to Eighteenth Street. Omaha then undertook on November 10, 1949, to enforce ordinance No. 16477 by proceedings in municipal court against a Transit Company employee. That court held that the ordinance was discriminatory and unconstitutional. Omaha then on November 19, 1949, undertook to enforce ordinance No. 14924 by like proceedings. The action here was brought on November 21, 1949, with the result heretofore stated.

Transit Company charged that ordinance No. 16477 was unconstitutional in that it discriminated between companies within the same class and deprived it of its equal right to engage in a lawful business in Omaha, and therefore deprived it of its property, all in violation of Article XIV, section 1, of the Constitution of the United States, and Article I, section 3, of the Constitution of Nebraska.

Transit Company charged that ordinance No. 14924 was not enforceable against companies holding authority from the Interstate Commerce Commission to operate in Omaha, and that it violated the commerce clause of the Constitution of the United States and was discriminatory and unconstitutional for the reasons assigned as to ordinance No. 16477.

Omaha answered that the ordinances were enacted in the exercise of its police power generally and particularly its power to control traffic on the streets; that there was no conflict between the ordinances and the orders of the Interstate Commerce Commission; and that the order of the commission left it to Omaha to determine the streets to be used by the two carriers in the turn-around in their interstate operations.

Transit Company bases its appeal here on the ground that both it and Bridge Company are operating under the same authority of the Interstate Commerce Commission granted at the same time; that the action of Omaha in limiting its use of the streets to Fourteenth

Street and allowing Bridge Company to operate to Eighteenth Street is not a reasonable exercise of Omaha's police power and is discriminatory, unconstitutional, and void; and that both companies have the same rights to the use of Omaha streets. It states the questions submitted as: Do these ordinances arbitrarily discriminate between the two companies; do they operate uniformly upon each company; and the question of "* * * whether in the exercise of this power it has discriminated against the plaintiff company * * *." It states that "* * * Omaha under its police power has the authority to regulate the operation of buses engaged in interstate commerce and traveling over the streets of the city."

Omaha's position is that there has been no unlawful or unreasonable discrimination.

In adopting the two ordinances here involved, Omaha acted legislatively. State ex rel. Nelson v. Butler, 145 Neb. 638, 17 N. W. 2d 683. The long established and often followed rule is: "* * * while it is competent for the legislature to classify, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified." State ex rel. Dawson County v. Farmers & Merchants Irrigation Co., 59 Neb. 1, 80 N. W. 52.

Municipal corporations are prima facie the judges of the necessity and reasonableness of ordinances. A legal presumption exists in their favor unless the contrary appears on their face or unless unreasonableness is established by clear and unequivocal evidence. Webber v. City of Scottsbluff, 141 Neb. 363, 3 N. W. 2d 635.

"In determining the validity of a city ordinance regularly passed in the exercise of police power, the court will presume that the city council acted with full knowledge of the conditions relating to the subject of municipal legislation."

"In the exercise of police power delegated by the

state legislature to a city, the municipal legislature, within constitutional limits, is the sole judge as to what laws should be enacted for the welfare of the people, and as to when and how such police power should be exercised." City of Omaha v. Glissmann, 151 Neb. 895, 39 N. W. 2d 828.

The burden is upon a person attacking an ordinance as invalid to show that a regulation imposed by it is so unreasonable and arbitrary as to amount to depriving such person of property without due process of law. Clough v. North Central Gas Co., 150 Neb. 418, 34 N. W. 2d 862.

The only discrimination that appears here is that Transit Company is required to turn its route at Fourteenth Street, while Bridge Company is permitted to turn its route at Eighteenth Street. From that we are expected to assume that Transit Company is denied access to potential traffic that is accorded to Bridge Company in that four-block-long area. There is nothing in this record upon which such an assumption can be based.

Transit Company argues here that prior to 1948, neither company was engaged in the business of operating motor buses for the transportation of passengers in interstate commerce; both companies are operating under the identical temporary authority of the Interstate Commerce Commission, an authority that does not specify the city streets over which each may operate; both companies are engaged only in interstate commerce in Omaha, and hence they are similarly situated and are engaged in operating a business in the same class.

We refer first to Transit Company's contention that prior to September 1948, neither company had been engaged in the business of operating motor buses for the transportation of passengers in interstate commerce. The applications here referred to have been determined by Division 5 of the Interstate Commerce Commission. See Omaha & Council Bluffs Railway & Bridge Com-

pany Common Carrier Application, 49 M. C. C. 445. In the course of its discussions and conclusions the division considered a comparable contention of Transit Company and held that under the circumstances there shown they were justified in treating the past operations of Bridge Company and Railway Company "* * * as having been conducted by the companies as a single carrier" and that the applications of Bridge Company and Railway Company were "* * * in reality for authority merely to utilize a new facility in the rendition of a service they have been performing for a half century." We follow that reasoning and conclusion here.

Transit Company relies upon our decisions in Ernesti v. City of Grand Island, 125 Neb. 688, 251 N. W. 899; Webber v. City of Scottsbluff, *supra;* State ex rel. Taylor v. Hall, 129 Neb. 669, 262 N. W. 835; and City of Lincoln v. Lincoln Gas & Electric Light Co., 100 Neb. 182, 158 N. W. 962.

The Ernesti case specifically recognizes the rule as heretofore stated from State ex rel. Dawson County v. Farmers & Merchants Irrigation Co., *supra.* The cases recognize the rule but find no valid basis for the discrimination in the facts of the case. Here we have no facts upon which to base a finding to overcome the presumption of validity of the ordinances under the above rules. There is no evidence here as to the amount of the use of the streets that either of the companies is making or proposes to make of the streets involved, neither is there any evidence of a comparative use. Omaha has knowledge of the width of its streets and the uses to which they are put; it has knowledge of its traffic problems, the density of use, and all other matters. It knows whether or not it is necessary to measure out the use of its streets and the extent of the use. It has only one set of streets. In the absence of evidence, as here, it is presumed that it acted with full knowledge of all conditions in determining when and how its police power should be exercised.

It then becomes a question of law as to whether or not Omaha has the power to grant the use of certain streets to Bridge Company and deny the use of those streets to Transit Company.

Transit Company here asserts the right to select the same route through Omaha that Bridge Company has been granted, or any other route that it chooses, and that without regard to any problem of traffic, public safety, or otherwise, that it is the duty of Omaha to solve. The issue then is, may Omaha designate separate routes within the city to be followed by such carriers in interstate commerce? The problem must be determined here in the light of the presumptions of fact and validity that follow from the state of this record.

In State v. Hind, 143 Neb. 479, 10 N. W. 2d 258, we held: "The city clearly has the right by ordinance to prescribe reasonable regulations for the control of traffic on its streets as a matter of public safety." We also approved this rule: " 'A police regulation, obviously intended as such, and not operating unreasonably beyond the occasions of its enactment, is not invalid simply because it may affect incidentally the exercise of some right guaranteed by the Constitution. In all matters within the police power some compromise between the exigencies of public health and safety and the free exercise of their rights by individuals must be reached.' "

It is apparent that the Interstate Commerce Commission has not undertaken to exercise any authority in this matter.

It also is apparent that the ordinances here involved do not prevent either company from operating in interstate commerce. The Supreme Court of the United States has held: "Where traffic control and the use of highways are involved and where there is no conflicting federal regulation, great leeway is allowed local authorities, even though the local regulation materially interferes with interstate commerce." Railway Express

Agency, Inc. v. New York, 336 U. S. 106, 69 S. Ct. 463, 93 L. Ed. 533.

In dealing with the problem of restricting the volume of traffic, the Supreme Court of the United States has held that it is not necessary to limit the extent of each certificate holder's use, and that "The guaranty of equal protection does not prevent the State from adopting the simple expedient of prohibiting operations by additional carriers." Bradley v. Public Utilities Commission, 289 U. S. 92, 53 S. Ct. 577, 77 L. Ed. 1053, 85 A. L. R. 1131. The same rule would, of course, apply to cities. That it seems to us is all Omaha has done here.

Evidence that one interstate carrier is granted the right by a city to use certain streets is not a sufficient fact to establish the right of another interstate carrier, operating under a like interstate authority, to use the same streets. A number of reasons are given for such a rule. As said in Railroad Commission v. McDonald (Tex. Civ. App.), 90 S. W. 2d 581, the use made by the first permittee may be all that the public safety and convenience will permit. A like conclusion was reached in Motor Transport & Truck Co. v. Public Utilities Commission, 125 Ohio St. 374, 181 N. E. 665, where the court pointed out that the record did not disclose that the order would result in either a substantial interference with or prohibition of the business of one engaged in interstate commerce, or that the carrier could not operate over another highway as well as over the congested one. See, also, People's Transit Co. v. Henshaw, 20 F. 2d 87; Town of Ascarate v. Villalobos (Tex.), 223 S. W. 2d 945.

An authoritative text states the rule generally as follows: "The right to operate vehicles on the streets of a municipality as a common carrier for hire is not an inherent or vested right, but is in the nature of a special right or privilege which may be exercised only by license or permission of the state, or of the municipality, under its delegated powers, and an individual conducting such a business without such permission

may be deprived of such right without compensation, as long as his right to pass over streets and do anything incident to their use for purposes of travel is not interfered with.

"As a mere privilege, the use of streets by common carriers is subject to reasonable control and regulation, and, since such a right or privilege is special, unusual, and extraordinary, the power to regulate and restrict such use of the streets is broader than in respect of their use by the general public. The state or municipality, within the limits of its delegated powers, may determine to what extent or on what streets such an extraordinary use as encroaches on the paramount rights of the public at large will be permitted, and it may discriminate against those making such use of the streets, and may either grant or withhold the right or privilege of operating vehicles for such a purpose, and may grant it to some and refuse it to others, without violating the constitution, except that a license or permission cannot be granted to some and refused to others who are willing to comply with the terms and conditions of the regulation providing for such license or permission." 64 C. J. S., Municipal Corporations, § 1760, p. 199.

We conclude, as did the trial court, that the ordinances are valid. Its judgment is affirmed.

AFFIRMED.

CARTER, J., dissenting.

On September 3, 1948, the Council Bluffs Transit Company was granted temporary authority by the Interstate Commerce Commission to operate as a common carrier of passengers by motor vehicle in interstate commerce between Omaha, Nebraska, and Council Bluffs, Iowa. The order granting such authority specifies "passengers between Omaha, Nebraska, and Council Bluffs, Iowa, over U. S. Highway 75 and city streets." On September 14, 1948, the Omaha & Council Bluffs Railway and Bridge Company was granted similar authority by the Interstate Commerce Commission between the same points in lan-

guage identical with that granted the Council Bluffs Transit Company. For convenience the two carriers will be referred to as the Transit Company and the Bridge Company. On September 14, 1948, Transit Company applied to the city council of Omaha for a permit to operate as far west as Eighteenth Street in Omaha. The application was denied. A later application made to the city council was also denied. On October 10, 1949, Transit Company commenced operating its buses west to Eighteenth Street. On October 25, 1949, the city council passed ordinance No. 16477 which provides that: "No common carrier of passengers operating with motor buses between Council Bluffs, Iowa, and Omaha, Nebraska, on or before October 9, 1949, shall operate the said buses over any of the streets of the City of Omaha other than those specified by name and or highway number in the certificate of the said carrier from the Inter-State Commerce Commission and those actually used by it on regular schedules on or before October 9, 1949." The Transit Company contends that this ordinance constitutes an invalid exercise of the police power by the city council of the city of Omaha.

The record shows that neither the Transit Company nor the Bridge Company had ever had any express authority granted to it to operate motor buses over the city streets of Omaha prior to the adoption of ordinance No. 16477 on October 25, 1949. Neither had either of the two companies operated in interstate business under Interstate Commerce Commission authority previous to the granting of the temporary orders herein mentioned. It is clear from the record that the authority of each to operate was identical prior to the passage of ordinance No. 16477. Contrary to the statement made in the majority opinion, neither had ever held a franchise granted by the city of Omaha, and certainly it was beyond the powers of the city of Omaha to grant a franchise to carry interstate passengers between Omaha and Council Bluffs.

It will not be questioned in this dissent that the city

of Omaha under its police power may reasonably regulate traffic upon its streets, including common carriers engaged in interstate commerce. But it is submitted that such regulation must be reasonable, it must operate uniformly as to class, the classifications must be reasonable, and the regulations must not be discriminatory or confiscatory. The holdings to this effect are legion. Webber v. City of Scottsbluff, 141 Neb. 363, 3 N. W. 2d 635; Ernesti v. City of Grand Island, 125 Neb. 688, 251 N. W. 899; Jewel Tea Co. v. City of Geneva, 137 Neb. 768, 291 N. W. 664. The majority opinion does not question the principles announced in the foregoing cases. It simply holds in effect that they have no application in a case where the use of city streets by common carriers is involved. It is submitted that although the law permits more stringent regulation of paid carriers in the use of public streets and highways, it in no manner permits or authorizes a departure from the rules as to reasonableness, classification, uniformity of operation, and freedom from discrimination and confiscation that is required in any other general exercise of the police power.

It is submitted that Transit Company and Bridge Company are in identical situations insofar as their regulation by the city of Omaha is concerned and that the ordinance prescribes an unreasonable classification when it fixes the use of streets on regular schedules before and after the arbitrary date of October 9, 1949, as the basis of its action. It is nothing more than the arbitrary division of members of the same class for purposes of legislation, a method which has been uniformly condemned as an improper exercise of the police power. If the fixing of an arbitrary date is sufficient in itself to sustain the classifications created for legislative purposes, reasonableness of classification and uniformity of operation as to class no longer protect against discrimination and confiscation. The protecting mantle of the Constitution is gone and the citizen is at the mercy of

legislative bodies, irrespective of constitutional prohibitions.

It is argued that because one of the two interstate carriers has previously contracted with a third intrastate carrier in the past to transport interstate passengers between Omaha and Council Bluffs, although without authority from the Interstate Commerce Commission, this gives a superior right which the city of Omaha can protect. There are two valid answers to this contention. First, the classification made by ordinance No. 16477 is not made on any such basis, and, second, no such plenary power is lodged with the city council of the city of Omaha. The majority opinion applies to a city ordinance the rules which courts have limited to the plenary powers over common carriers granted to railway and public utility commissions by specific constitutional grant. A perusal of the cases cited in the majority opinion is conclusive on this point. It is submitted that a city council has no such power in this state. Municipalities have no authority in this state to regulate common carriers for the purpose of protecting them from competition for the public welfare, or to foster monopolies and regulate them in the public interest by fixing rates and determining routes. The Constitution places that power exclusively in the railway commission by the following language contained in Article IV, section 20, thereof: "The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision." In the absence of implementing legislation the provision is self-executing. It is exclusive, and the powers of the railway commission cannot be properly invaded by a municipality. The power to grant certificates of convenience and necessity to protect established carriers against harmful competition rests exclusively with the railway commission. State ex rel.

State Railway Commission v. Ramsey, 151 Neb. 333, 37 N. W. 2d 502. Municipalities in this state have never been granted plenary powers over common carriers. Any theory that the present ordinance can be upheld as a means of protecting an established common carrier against the inroads of competition by another simply has no basis in law. If such be the reason for the ordinance, the parties are in the wrong forum.

We have repeatedly held that where, in the exercise of the police power, an ordinance is passed which shows on its face that the classifications made are unreasonable and arbitrary, that it does not operate uniformly as to class and is therefore discriminatory, it is void. It is only where such an ordinance appears regular on its face, but is in fact discriminatory or confiscatory, that evidence must be produced to establish injury to the complainant to overcome the presumption of regularity. There is no presumption of validity of an ordinance which is void on its face.

I submit that the classifications contained in the ordinance as a basis for legislation are made on an arbitrary basis and are therefore unreasonable. The purported classification is nothing more than a division of members of the same class for the purposes of the legislation and consequently violates the rule as to uniformity of operation upon those in the same class. The ordinance is discriminatory on its face and is void for that reason. It, if sustained, permits the exercise by a municipality of plenary powers over common carriers where the Constitution exclusively reserves such powers to the railway commission. The ordinance shows, also, that its object was something other than the safety and welfare of the public or the protection of the city's streets. Its purpose was clearly to favor one over another in the same class by attempting in an arbitrary manner to divide the class by the use of an arbitrary date. It freezes the designated class when it makes common carriers of passengers operating with motor buses "over any of

the streets of the City of Omaha other than those specified by name or highway number in the certificate of the said carrier from the Inter-state Commerce Commission and those actually used by it on regular schedules on or before October 9, 1949." The benefits are special and discriminatory in that no person or entity, other than the Bridge Company, can ever be a member of the class limited to those operating prior to the arbitrary date of October 9, 1949.

I submit that ordinance No. 16477 violates almost every limitation which has heretofore been placed upon the exercise of the police power by legislative bodies. In upholding the validity of the ordinance this court has abandoned fundamental principles which have protected the citizen against discriminatory and confiscatory legislation. To the striking down of this protection against discrimination and confiscation I respectfully but emphatically dissent.

I am directed by Wenke and Boslaugh, JJ., to state that they join in this dissent.

CHAPPELL, J., concurring.

I do not question propositions of law discussed and relied upon in the dissenting opinion. However, I do deny that they are controlling under the particular facts, circumstances, and issues presented in this case.

In that connection it was stipulated by the parties that the Railway Company did operate the streetcar line between Council Bluffs, Iowa, and Omaha, Nebraska, under an agency or management contract with the Bridge Company from 1902 or thereabouts to September 15, 1948, and has operated a motorbus line between Council Bluffs and Omaha under another such an agency or management contract since on or about September 15, 1948.

It was further stipulated that since on or after August 10, 1930, the streetcar lines ran as far as Twentieth Street in Omaha until conclusion of the streetcar lines' operations on or about September 15, 1948, and that since

September 25, 1948, when motorbus operation was begun by the Railway Company under its agency or management contract with the Bridge Company, the west terminus of the operation had been at Eighteenth Street.

Subsection 11, page 7, of the franchise granted by the city of Omaha to the Railway Company on August 14, 1928, provided: "The Consent given by this ordinance is limited to intra-city transportation exclusively, except that grantee is hereby authorized to operate suburban, interurban or interstate electric or motor bus passenger transportation lines owned, leased or legally operated by grantee, by connecting same with its city lines or entering the city over the tracks or along the routes of grantee, for interurban transportation exclusively, and to be operated subject to all of the provisions of this ordinance and the legal requirements of Nebraska Statutes." Thereby it appears to me that the aforesaid agency or management contract was authenticated by the people of the city of Omaha.

In that connection also, the temporary permits or authority issued to Transit Company and the Bridge Company by the Interstate Commerce Commission, were not identical. The Bridge Company's permit, by appendix dated September 14, 1948, specifically provided: "Applicant is hereby authorized to enter into an agency or management agreement with the Omaha & Council Bluffs Street Railway Company, MC 57037 Sub 1 TA, during the continuance of this temporary authority, provided, however, that the service authorized by the order of which this is a part and all operations performed in the rendition of such service shall be in the name of applicant and applicant shall assume full responsibility therefor, both to the patrons of such service and to the general public." It thus authenticated the aforesaid agency or management agreement.

As I view it, under such circumstances, the classification made by the ordinances here involved was not unreasonable, arbitrary, or unlawful, because there were

but two companies involved and they were clearly not in identical situations. The Bridge Company had, by permission of the city, continuously operated over the very streets here involved for almost a quarter of a century before Transit Company attempted, without permission of the city, to intrude its lines over the same route.

The jurisdiction of the Nebraska State Railway Commission is not involved in any manner. Transit Company has never attempted to invoke it and seek any relief in that forum. In that connection, it was stated in Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756: "We must not permit a confusion between the jurisdiction of the city and the railway commission. There is a clear distinction between powers of a city to grant or withhold franchises, licenses or permits to use its streets, police power, and the exclusive constitutional power of the railway commission to impose regulation and control over the city's common carriers."

The effect of the ordinances involved was to simply deny Transit Company permission to duplicate bus service upon certain city streets. Under the circumstances, I am convinced that the city had such jurisdiction and authority.