## BARTON ET AL. v. PUBLIC SERVICE COMMISSION OF MARYLAND

[No. 16, September Term, 1957.]

*Decided October 22, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Hyman A. Pressman,* for appellants.

*Stanley Scherr,* for appellee.

HAMMOND, J., delivered the opinion of the Court.

Appellants are owners of taxicabs licensed by Baltimore County who operate primarily in that County, although they legally may, and occasionally do, carry passengers from there to Baltimore City. They applied to the Public Service Commission for the right, heretofore denied them by the Commission, to pick up fares in the City for the return trip to the County. Their application was rejected, and they appealed to the Circuit Court for Baltimore County, which affirmed. We are asked to reverse the Circuit Court.

The appellants contend that they are being denied the equal protection of the laws and that the action of the Public Service Commission was discriminatory, arbitrary and unlawful. The contentions so blend, one into the other, that they may be considered and decided together.

The applicable statutory law is found in Code, 1957 Supp., Art. 78. In Sec. 2, taxicabs are declared to be common carriers; Sec. 38 (a) provides that no taxicab may be operated in any incorporated city or town with a population of more than fifty thousand or between points within such city or town and points without thereof without a written permit from the Commission; Sec. 38 (b) provides that a permit is to be issued if the Commission after investigation judges that its granting would be best for the public welfare and convenience; Sec. 83 provides for judicial review of any final order or decision of the Commission, affirmative or negative; and Sec. 90 directs that every such final decision or order shall be prima facie correct and be affirmed, unless (so far as is here pertinent) "clearly shown to be (1) in violation of constitutional provisions, or * * * (4) arbitrary or capricious."

The Commission allows Baltimore City cabs to go to Baltimore County and to pick up passengers there for the return trip. On the other hand, whereas County taxicabs are allowed to bring passengers to the City and to return the same passengers to the County, under the rules of the Commission no new passenger may be accepted for the return trip to the County. Rule 4 establishes a zone of proximity to Baltimore City of a quarter of a mile from the boundary along any route traversed by a taxicab. Rule 8 says in part: "Taxicabs

which are being operated in communities outside the proximity of Baltimore, as defined in Rule 4, which are not operating under a permit from the Commission, may bring passengers from said communities into the City of Baltimore, but shall not receive any passenger within the City, other than said passengers brought from a community outside the proximity thereof." The *Code of Public Local Laws of Baltimore County,* Everstine, 1955, Sec. 273, authorizes the County to regulate taxicabs there operating regularly, but provides that the regulation shall not extend to "taxicabs regularly operating in Baltimore City and operating occasionally in Baltimore County, provided that said taxicabs are subjected to regulation * * * by the Public Service Commission of Maryland * * *."

It is clear that taxicabs licensed in Baltimore City lawfully may do in Baltimore County what taxicabs licensed in the County may not do in the City. Clearly there is discrimination in the general or popular meaning of the word, but this is not to say that there is discrimination in the constitutional sense. If it is not arbitrary, discrimination is not invalid, and it is not arbitrary if it is based on a reasonable classification. Reasonableness of classification may often rest on a territorial basis, particularly where the affected territory has a large concentration of people. *Salsburg v. Maryland,* 346 U. S. 545, 98 L. Ed. 281, 288 ("The Equal Protection Clause relates to equality between persons as such rather than between areas.") affirming *Salsburg v. State,* 201 Md. 212 (rule of evidence different in one county from that in most of the State); *Weksler v. Collins* (Ill.), 147 N. E. 797; and *Packard v. Banton,* 264 U. S. 140, 68 L. Ed. 596 (in each case taxicabs in only the largest cities of the State were required to carry insurance); *Tenement House Department v. Moeschen* (N. Y.), 72 N. E. 231, affirmed by the Supreme Court under the name of *Moeschen v. New York Tenement House Department,* 203 U. S. 583, 51 L. Ed. 328 (the law affected only tenement houses and only those in cities of first class); *State v. Shapiro,* 131 Md. 168 (different rates of license fees for privilege of dealing in junk according to the population of the place where the business was conducted);

*Mt. Vernon Co. v. Frankfort Co.,* 111 Md. 561 (children under fourteen prohibited in mills and factories of Baltimore City and several counties but allowed to so work in the other counties and in canning factories). "It has long been the practice of the Maryland Legislature either to enact local laws or to exempt particular counties from the operation of general laws." *Neuenschwander v. Washington Sanitary Commission,* 187 Md. 67, 80.

The Public Service Commission wrote appellants that it had denied their application for the reasons set forth in Governor McKeldin's veto message as to Senate Bill 187 of the 1955 session of the Legislature. That bill would have permitted Baltimore County cabs to take on passengers in Baltimore City for the return trip. The Governor reported to the Legislature that it would be impossible to supervise adequately operations of the Baltimore County taxicabs in the City to make sure that they were merely transporting passengers from the City, and that even if this could be done, the practical effect of the bill would be to increase by indirection the number of taxicab licenses in the City. It is stipulated that the Commission's reasons for the rejection of the application are those set out in the veto message.

We think that there was nothing arbitrary, unlawful or unconstitutional in the refusal of the Commission to grant what the appellants seek. As appears in *Albert v. Public Service Commission,* 209 Md. 27, the Commission has determined that it would not be in the public interest that there be more than 1,151 licensed taxicabs in Baltimore City. This is a quasi-legislative determination that is *prima facie* correct and may not be judicially disturbed except upon clear and satisfactory evidence that it is arbitrary, unlawful or unconstitutional. *Public Service Commission v. Baltimore Transit Co.,* 207 Md. 524. There is no such evidence here. It is conceded that the granting of the appellants' request would increase to some extent the number of cabs operating in the City and so, to that extent, would not be in the public interest as determined by the Commission. Conditions in a congested metropolis, with its concentration of people and vehicles, and

the foreseeable evils and dangers implicit in an excess of cabs, with resulting overeager competition for fares, come readily to mind as factors which may have led the Commission to limit the number of taxicab permits in Baltimore City and to deny additional competitive rights to Baltimore County cabs.[1] The *Albert* opinion recites that almost five thousand applications for taxicab permits are on file with the Commission. The granting of appellants' application would give them, in effect, some of the benefits denied the five thousand permit seekers, and it must be remembered that if Baltimore County cabs were allowed to pick up passengers in the City, cabs from Anne Arundel and Howard and other nearby counties could, with equal grace, seek the same privilege; the aggregate of County cabs in the City could well result in a disarrangement of competitive conditions disadvantageous to the public interest.

The extent of competition between common carriers and the selection of competitors is for the legislative branch and not for the judiciary, absent arbitrary action. This Court has held that where the Commission, to which the Legislature has delegated the power to so determine, decides that regulated monopoly along a certain route by one public motor carrier best serves the public interest, the Court will not say that another carrier should be given competitive privileges along that route. *Bosley v. Quigley,* 189 Md. 493; *Hartman v. Public Service Comm.,* 179 Md. 285.

Where the sovereign exercises the police power by a statute, challenged as discriminatory, that prohibits or limits activities or endeavors that are not vested or natural rights but rather matters of grace or permissive privileges, the measure of what is reasonable is longer and broader. *Sals-*

---

1. It is conceded that the Commission has never been asked to prohibit Baltimore City cabs from picking up passengers in the County and this aspect of the matter need not be considered. In denying the County the right to prohibit this practice—*Code of Public Local Laws of Baltimore County,* Everstine, 1955, Sec. 273—the Legislature may well have had in mind that conditions and circumstances in the County did not warrant the prohibition. In any event it has not been shown in this case that they do.

*burg v. State,* 201 Md. 212, 224, *supra.* The streets belong to the public and "Their use for the purposes of gain is special and extraordinary and, generally at least, may be prohibited or conditioned as the legislature deems proper." *Packard v. Banton,* 264 U. S. 140, 68 L. Ed. 596, 608, *supra.* It was noted in the *Albert* case that there are no vested rights of liberty or property involved in the granting or withholding of permits for taxicabs and that a license to operate them is but a mere privilege or permission and in no sense a contract or property. *Wampler v. LeCompte,* 159 Md. 222, 228, observed that a classification that has some reasonable basis, however slight, does not offend the equal protection clause because in practice it results in inequality. The cases dealing with alleged discrimination as to busses, jitneys and taxicabs demonstrate the soundness of the observation. *Town of Ascarate v. Villalobos* (Tex.), 223 S. W. 2d 945, held that a city ordinance prohibiting any busses from stopping in the city to receive or discharge passengers, except at certain designated points, unless the operator had a franchise from the city, was not unreasonable or violative of the equal protection of the laws. *Schwartzman Service v. Stahl,* 60 F. 2d 1034 (W. D. Mo. 1932, statutory three-judge court), decided once more that the use of the highways as a common carrier for hire is a privilege which may be granted or withheld by the state in its discretion or, generally, granted to one and denied another without violating either the due process clause or the equal protection clause, and that exemption of motor vehicles used exclusively in transporting farm and dairy products to original storage or market was not an unconstitutional discrimination as to other contract haulers. See too *Continental Baking Co. v. Woodring,* 286 U. S. 352, 76 L. Ed. 1155; *Bradley v. Public Utilities Commission,* 289 U. S. 92, 77 L. Ed. 1053; *Davis v. Commonwealth of Massachusetts,* 167 U. S. 43, 42 L. Ed. 71; *Nolen v. Riechman,* 225 F. 812; *Lane v. Whitaker,* 275 F. 476, 480; *Council Bluffs Transit Co. v. City of Omaha* (Neb.), 49 N. W. 2d 453; *Weksler v. Collins* (Ill.), 147 N. E. 797, *supra.*

We find nothing to justify a judicial holding that the de-

cision of the Public Service Commission complained of was either unconstitutional, arbitrary or capricious.

*Order affirmed, with costs.*